CONVENT OF THE SISTERS OF SAINT JOSEPH OF CHESTNUT HILL, PENNSYLVANIA, v. CITY OF WINSTON-SALEM.

(Filed 13 January, 1956.)

**1. Controversy Without Action § 4: Appeal and Error § 6c (3) —**

Where the parties agree upon a statement of facts on which the case is submitted to the trial court, exception to the failure of the court to find other facts is not well taken.

**2. Appeal and Error § 6c (2) —**

Exception and assignment of error to the judgment and to the entry of the judgment present solely whether the facts found or agreed support the judgment.

**3. Constitutional Law § 6 ½ —**

Ordinarily, the acceptance of benefits under a statute or an ordinance estops a party from attacking the constitutionality of the statute or ordinance.

**4. Same: Municipal Corporations § 37—Plaintiff held estopped to contest validity of zoning ordinance.**

The facts agreed disclosed that the Bishop of the Diocese of the Roman Catholic Church, which owned land subject to the zoning authority of a municipality, applied for and obtained on behalf of the Diocese a use permit under a zoning ordinance, permitting the use of the property for a church school subject to restrictions that no changes be made in the exterior of the buildings, except those that might be required by the applicable building codes, that thereafter the Bishop applied for a modification of the permit, which was refused, that the property was subsequently transferred to the Sisters of a Convent, who then made a like request for modification, which was also refused, and that the Sisters took title to the property with full knowledge of the facts, and further that the Bishop under Canon Law is charged with the function of a general and religious supervisor in the regulation of the activities of church schools in the area. *Held:* The Bishop, by accepting the benefits of the provisions of the zoning ordinance, waived any right to contest the validity of the ordinance, and under the facts, the Sisters were likewise estopped.

BARNHILL, C. J., took no part in the consideration or decision of this case.

APPEAL by plaintiff from *Crissman, J.*, at 18 April, 1955, Term of FORSYTH, as No. 748 at Spring Term, 1955, of this Court, carried over to Fall Term, 1955, as No. 380.

Civil action for declaration of rights, status and relationships of plaintiff under the zoning ordinances of the City of Winston-Salem and a special use permit issued under and pursuant to said ordinances to the "Catholic Diocese of North Carolina" for a private school on and in respect to certain property to which reference is hereinafter made.

The record on this appeal discloses that after the pleadings were filed plaintiff and defendant agreed upon certain facts, "upon which, together with such additional facts, if any, which the court may find, the rights, status, and other legal relations of the parties to this action are to be determined": In summary, these are substantially the facts agreed:

"1. Plaintiff, hereinafter referred to as 'the Sisters' is a non-profit, charitable and religious corporation created and existing under and by virtue of the laws of Pennsylvania,"—having been "engaged in such charitable and religious functions in Winston-Salem since 1943."

"2. Defendant, hereinafter referred to as 'the City' is now, and was at all the times hereinafter mentioned, a municipal corporation situated in Forsyth County, and created by and existing under certain Private Acts of the General Assembly of North Carolina and other amendatory acts of said General Assembly."

The property around which the controversy in this action revolves consists of three platted building lots, 1, 2 and 7, Block 1444, Forsyth County Tax Map, totalling about 3.51 acres. The buildings thereon consist of an eleven-room main house and a separate building consisting of a greenhouse, servant apartment and 3-car garage. It is situated in a subdivision originally called "Westview No. 1," which together with Westview Nos. 2 and 3, and the Country Club Estates, covers an area of some 220 acres. From time to time many expensive homes have been erected in these developments. All lots in the named subdivisions were sold subject to certain restrictive covenants, one of which was: "The property shall be used for residential purposes only, and no building other than residences, except garages or outhouses for domestic purposes shall be built on said premises, provided, that this shall not apply to churches and schools." All of the named subdivisions fall within an area zoned as Res. A-1 by the ordinance of the City.

"6. On December 21, 1948, the City enacted the present zoning ordinance, which repealed and replaced the former zoning ordinance of the City, adopted about the year 1930 . . . under the provisions of the enabling Act, adopted by the General Assembly of North Carolina, in

the year 1947, and under Section 116 of the Charter of the City of Winston-Salem adopted March 3, 1927, and reading as follows: 'The ordinances now in force in the city of Winston-Salem, and such as may hereafter be adopted, shall operate and have effect within one mile outside of the corporate limits of the City . . .'

"The zoning ordinance adopted December 21, 1948, by its terms allegedly extended to and included the area lying within the three miles of the corporate limits of the City. At the time of the enactment of said ordinance," the property and premises have involved "was a private homesite and dwelling house belonging to the estate of the late B. F. Huntley, which at the time of said enactment, was located approximately 2,300 feet outside the nearest corporate line of the city of Winston-Salem, which was extended on January 1, 1949, to include the premises. Pertinent portions of said zoning ordinance set forth in Exhibit B attached to and made a part of the findings . . . provide, *inter alia*, that 'public' schools may be located in all residential zones; that 'private' schools are prohibited from all residential zones except on application for, public hearings on, and grant of, a 'Special Use Permit' by the Zoning Board of Adjustment under the provisions of Section 13 of said Zoning Ordinance." The zoning ordinance does not define the words "public" and "private" as used with respect to schools.

"7. The zoning ordinance divides the city into nine (9) zones: four (4) residential and five (5) business, commercial, or industrial . . ."

"8. On December 23, 1948, the Catholic Bishop of Raleigh purchased the premises involved herein for use as a church elementary school. Application was made by said Bishop for a special use permit under the provisions of Sec. 13, Zoning Ordinance of the City of Winston-Salem. Several public hearings were had and numerous parties registered opposition. On February 17, 1949, a Special Use Permit was issued." Certain conditions were attached to said permit. The permit reads:

"This is to certify that The Zoning Board of Adjustment has authorized the granting of a Zoning Permit and the same is hereby granted to the Catholic Diocese of North Carolina, for the use of the following described property and the buildings situated thereon for a Private School Subject To The Following Conditions:

"1. Amending the petition to read as follows: 'Existing buildings to be used for a private, day nonboarding school for white children.'

"2. Legal agreements being executed providing that there will be no structural changes on the exterior of the present buildings, except those required by the State and City Building Codes relating to schools.

"3. That no additional buildings of any kind will be erected on the land in question."

"Description of Property:" Omitted.

And the agreed facts continue:

"The Catholic Bishop of Raleigh, through counsel, accepted said permit with the conditions set out therein. None of said conditions apply to public or other non-public schools located in residential zoned areas."

"9. The premises and existing buildings thereon were used as an elementary school during the period September 1949 through May 1954. The Sisters conducted said school. Enrollment for the school period 1953-54 was 212 pupils. In 1954 a new church elementary school was completed on other premises in the same residential zone and adjoining the parish church. Plans were made to operate a girls high school upon the premises involved here.

"10. . . ." (here the church school presently operated on the premises is described).

"11. The Catholic Bishop of Raleigh made application on July 23, 1954, for changes in the conditions of the Special Use Permit. Said requested changes are set out in the proposed Special Use Permit presented to the Zoning Board of Adjustment" are these:

"This is to certify that the Zoning Board of Adjustment has authorized the granting of a Zoning Permit and the same is hereby granted to the Catholic Diocese of North Carolina, or successors in title, for the use of the following described property and the buildings situated thereon for a private school subject to the following conditions:

"1. The following described property and buildings presently existing thereon or which may come into existence thereon shall be used for a private day nonboarding school for white children.

"2. There shall be no structural changes to the exterior of, or additions to, the present buildings, except those required by the State and City Building Codes relating to schools, and except for those which shall not be detrimental to the exterior appearance of the present buildings.

"3. That no additional buildings of any kind shall be erected on the land in question, except after submission of plans for said additional buildings to, and approval thereof by, the Zoning Board of Adjustment under applicable provisions of Sec. 13 (a) of the Zoning Ordinance of the City of Winston-Salem.

"Description of Property:" Omitted.

The agreed facts continue:

"Procedures required by Section 13 of the Zoning Ordinance were complied with and a public hearing held. A number of persons indicated opposition. The Zoning Board of Adjustment on August 9, 1954, voted unanimously against changing the conditions of the outstanding Special Use Permit.

"12. The Sisters purchased the premises involved here on February 3, 1955. In connection with the continued use of the premises for school purposes, the Sisters determined that it was necessary and desirable to convert the unused garage at the rear of the premises into a classroom. Conversion requires the removal of three double swinging type wooden doors and replacement thereof by a masonry wall with windows and a door; installation of a new floor and equipment. Application for a building permit for such work was made on February 5, 1955. . . . On March 16, 1955," by letter from Superintendent of Inspections to attorney for the Sisters, building permit was refused, for that, in summary, the zoning permit issued on February 17, 1949, contained the provisions hereinabove set forth; that thereafter on August 9, 1954, the Catholic Diocese, the owner of the property at that time, applied for modification of the foregoing provisions, in manner specified, and that after this request was filed and after it was heard by the Zoning Board of Adjustment it was denied. The letter concluded with this statement: "In my opinion to grant a permit at this time upon the application dated February 5, 1955, would violate and would be contrary to the provisions contained in the permit issued by the Board of Adjustment on February 17th, 1949. For this reason, and for the further reason that issuance of a permit on the application dated February 5, 1955, would violate the Zoning Ordinance of the City of Winston-Salem, this application is denied."

And the agreed facts continue: "Said changes and construction will constitute a structural change to the exterior of the building involved and are not required by the State or City Building Codes relative to schools. Neither the existing buildings nor the said changes and construction do or would violate any provision of the zoning ordinance as to yard, area, or height."

"13." (Pertains to the public school system of Winston-Salem.)

"14. (a) Defendant City maintains and contends that the Zoning Ordinance, by its terms, prohibits schools of the nature and class as that operated by plaintiff from being located on, or using, as a matter of right or law, premises located within any area of Winston-Salem zoned for residential purposes.

"(b) Defendant City maintains and contends that the Zoning Ordinance by its terms, makes the location of, or use of, premises within any area of Winston-Salem zoned for residential purposes, by schools of the nature and class as that operated by plaintiff, a matter of permission, which may be granted or withheld under the provisions of Section 13, of said Zoning Ordinance.

"(c) Defendant City maintains and contends that the said Special Use Permit, with conditions attached, as set out in Exhibit C, was

validly issued, and is presently in force and effect, including said conditions.

"(d) Defendant City maintains and contends that the conditions attached to said Special Use Permit validly prohibits structural changes (except those required by the State and City Building Codes relating to schools) to the exterior of buildings presently located on said premises and validly prohibit any additional changes regardless of size, structure, appearance, or area of premises occupied, from being built on said premises.

"(e) Defendant City intends to enforce the provisions of its Zoning Ordinance and the conditions of the Special Use Permit against plaintiff by taking such action as may be necessary."

"15. When the Sisters purchased the premises involved herein on February 3, 1955, from the Catholic Diocese of North Carolina, they had knowledge of all of the conditions contained in the Zoning Permit dated February 17, 1949, issued by the Zoning Officer of the City of Winston-Salem, same being plaintiff's Exhibit C, and the Sisters also had knowledge at that time that the Catholic Bishop, acting for and on behalf of the Catholic Diocese of North Carolina, had assented and agreed to all the conditions contained in said Zoning Permit.

"16. That . . . from time to time over a period of years many expensive homes . . . have been erected in said developments . . . and many of these residences were erected in close proximity to the B. F. Huntley homesite property before it was purchased by the Catholic Bishop of North Carolina.

"17. That numerous property owners, living in close proximity to the property involved in this proceeding, formerly owned by the Estate of the late B. F. Huntley, appeared at the public hearings, conducted by the Zoning Board of Adjustment of the City of Winston-Salem, with respect to the two applications filed by the Catholic Bishop of North Carolina and opposed the granting of the permits applied for, including the permit issued February 17, 1949 . . . At these hearings these property owners contended that the use of the B. F. Huntley Estate property for school purposes would violate the restrictive covenants contained in all the deeds in the Westview Development, and included also in the deeds to the Huntley property, and that same was contrary to the Zoning Ordinance of the City of Winston-Salem, and that the establishment and operation of a school on said premises would injure the property of home owners in said developments and cause a depreciation in the value of their properties.

"18. That the purpose underlying the application for the building permit dated February 5, 1955 and filed by the Sisters with the proper officials of the City of Winston-Salem is to convert the 4-(3) car garage

11—243

building, situated upon the premises in question and formerly used by the late B. F. Huntley for the storage of his family automobiles, into additional classroom space and thereby to enlarge the classroom facilities located upon the property in question.

"The Sisters agree that the conversion of the garage will provide additional classroom space, but insist that the primary purpose of such conversion is that the concrete floor of the garage is more suitable for science room purposes.

"This 6th day of February 1955."

"In order to avoid confusion, counsel for both plaintiff and defendant agree that the terms 'Bishop'; 'Catholic Bishop of Raleigh'; 'Catholic Diocese of North Carolina'; 'Catholic Diocese'; 'Catholic Bishop of North Carolina,' and similar terms, as used throughout the record, are synonymous and refer to Vincent S. Waters, Catholic Bishop of the Diocese of Raleigh, North Carolina."

The cause coming on for hearing, and being heard, "upon the agreed statement of facts, as appears of record, and the parties having waived trial by jury and having agreed that the court might hear and pass upon the questions involved on the basis of agreed statement of facts, and the parties having agreed through counsel in open court that the judgment might be signed out of term and out of the district as of the date the case was argued on April 8, 1955, and the court having considered the agreed statement of facts, the briefs of the parties, and the argument of counsel, and, on the basis thereof, the court, being of opinion that the plaintiff is not entitled to any of the relief sought in this case . . . ORDERED, DECREED AND ADJUDGED that the Zoning Permit issued by the Zoning Officer of the City of Winston-Salem to the Catholic Diocese of North Carolina, dated February 17, 1949, together with all the conditions thereof, is valid and binding upon the plaintiff in this action and that the application for Building Permit filed by the plaintiff in this action under date of February 5, 1955, violates the conditions contained in the Zoning Permit dated February 17, 1949, and the same is contrary thereto and the refusal of the Superintendent of Inspections of the City of Winston-Salem to grant to the plaintiff the building permit applied for on February 5, 1955, was proper and is binding upon the plaintiff in this action, and the plaintiff is not entitled to any of the relief sought in this action, and the same is hereby dismissed, and the plaintiff and its surety are taxed with the costs."

The record also discloses that upon being notified of the decisions of the court, plaintiff, through counsel, filed written motion, supported by affidavit, for a rehearing, on the ground, *inter alia*, that the "sole basis for said decision is the assumed fact that the plaintiff and the Catholic

Bishop of Raleigh are one and the same legal entity . . . which is not borne out by the facts before the court . . ."

In support of its motion, signed by its attorneys, plaintiff filed an affidavit of Vincent S. Waters, dated 18 April, 1955, in which it is stated.:

"I, Vincent S. Waters, being first duly sworn, deposes and says: I am the Catholic Bishop of the Diocese of Raleigh, State of North Carolina, and as such hold title to all parochial real estate in the Diocese under Section 61-5 of the General Statutes of the State of North Carolina of 1943, as well as under the laws, regulations and discipline of the Catholic Church and its Code of Canon Law. In this capacity, I formerly owned lots 1-2-7, block 1444, Forsyth County, Tax Map of the City of Winston-Salem, North Carolina.

"On February 3, 1955, by Warranty Deed of January 18, 1955, I conveyed this property to the Sisters of St. Joseph of Chestnut Hill, Philadelphia, Pennsylvania. The Sisters are a nonprofit charitable corporation under the laws of Pennsylvania. Since the date of said deed I have no legal interest in the described land and under the laws and regulations and discipline of the Catholic Church this property belongs to the Sisters of St. Joseph of Chestnut Hill, Philadelphia, Pennsylvania, which is a separate and distinct entity from the Diocese of Raleigh, North Carolina.

"My sole connection with the Sisters of St. Joseph of Chestnut Hill insofar as the land described is concerned is that as Bishop of the Diocese of Raleigh, I am charged by the Church and Canon Law with the function of a general and religious supervisor in the regulation of their activities and schools in this area. Such functions do not in any way pertain to the ownership of the above described land.

"Given this 18th day of April 1955.

                    (s)  VINCENT S. WATERS
                         MOST REVEREND VINCENT S. WATERS,
                         Bishop of the Diocese of Raleigh, N. C."

The defendant filed answer, also supported by affidavit, in which it denies the allegations of the motion of plaintiff so made as just stated. The motion was overruled and plaintiff excepted. Exception No. 1.

The court made no finding of fact in respect thereto, and there was no specific request that the court do so.

Judgment, as hereinabove set forth, was signed, and "plaintiff again excepts (Exception No. 2) and appeals to the Supreme Court for errors assigned and to be assigned."

*Deal, Hutchins & Minor for plaintiff, appellant.*
*Womble, Carlyle, Sandridge & Rice for defendant, appellee.*

WINBORNE, J. The parties having agreed upon a statement of facts on which the case was submitted to the trial court, exception to the failure of the court to find other facts is not well taken. Hence exception to the judgment, and to the entry of it, assigned as error on this appeal presents for decision this question: Do the facts to which the parties agreed support the judgment? *Culbreth v. Britt,* 231 N.C. 76, 56 S.E. 2d 15, and cases cited. See also *Duke v. Campbell,* 233 N.C. 262, 63 S.E. 2d 555; *In re Hall,* 235 N.C. 697, 71 S.E. 2d 140, and cases cited. Also *James v. Pretlow,* 242 N.C. 102, 86 S.E. 2d 759; *Scarboro v. Ins. Co.,* 242 N.C. 444, 88 S.E. 2d 133; *Byrd v. Thompson, ante,* 271. The answer is "Yes."

The acceptance of benefits under a statute generally precludes an attack upon it. See 11 Am. Jur., pp. 765 to 767; *Cameron v. McDonald,* 216 N.C. 712, 6 S.E. 2d 497; *Wall v. Parrott,* 244 U.S. 407, 61 L. Ed. 1229, 37 S. Ct. 609.

In the *Wall case* the U. S. Supreme Court had this to say: "They cannot claim the benefit of statutes and afterwards assail their validity. There is no sanctity in such a claim of constitutional right as prevents it being waived as any other claim of right may be."

And in 11 Am. Jur., p. 766, the text writer states: "Estoppel to question the constitutionality of laws applies not only to acts of the Legislature, but to ordinances and proceedings of municipal corporations, and may be extended to cases where proceedings of a municipal corporation are questioned on the ground of the unconstitutionality of the statute under which they are had, as well as to cases where they are attacked on other grounds."

The writer continues: "Estoppel is most frequently applied in cases involving constitutional law where persons, in some manner, partake of advantages under statutes. The rule is well settled that one who voluntarily proceeds under a statute and claims benefits thereby conferred will not be heard to question its constitutionality in order to avoid its burdens. Certainly such a person will not be allowed to retain his advantage or keep his consideration and then repudiate the act as unconstitutional. This principle applies also to questioning the rules or actions of state commissions."

Moreover, in *Cameron v. McDonald, supra,* this Court said: "It is the general rule, subject to certain exceptions, that a defendant may waive a constitutional as well as a statutory provision made for his benefit . . . and this may be done by express consent, by failure to assert it in apt time, or by conduct inconsistent with a purpose to insist upon it," citing *S. v. Hartsfield,* 188 N.C. 357, 124 S.E. 629.

In the light of these principles the answer finds support in a recital of the agreed facts in logical order. The B. F. Huntley home site and

dwelling were located within an area zoned as Res. A-1 by the zoning ordinance of the city. The zoning ordinance prohibited private schools from all residential zones, except upon "Special Use Permit" granted by the Zoning Board of Adjustment under the provisions of Section 13 of the ordinance. The Catholic Bishop of Raleigh purchased the Huntley premises for use as a church elementary school. He then applied for a special use permit under the provisions of Section 13 of the zoning ordinance of the city. Procedure there prescribed was followed, and a special use permit was issued upon conditions stated. The Bishop, through counsel, accepted the permit on 17 February, 1949. The premises and existing buildings thereon were used as an elementary church school during the period September 1949 through May 1954. The Sisters conducted the school. In 1954, plans having been made to operate a girls' high school upon the premises, the Bishop made application on 23 July, 1954, for changes in the conditions of the special use permit. Procedure prescribed by Section 13 of the Zoning Ordinance was complied with, and after public hearing, the Zoning Board of Adjustment, on 9 August, 1954, voted unanimously against changing the conditions of the outstanding special use permit. Then on 3 February, 1955, the Sisters purchased the premises with knowledge of all of the conditions contained in the zoning permit, dated 17 February, 1949, and with "knowledge . . . that the Catholic Bishop, acting for and on behalf of the Catholic Diocese of North Carolina, had assented and agreed to all the conditions contained in said zoning permit."

And in connection with the continued use of the premises for school purposes, the Sisters applied for a building permit on 5 February, 1955. On 16 March, 1955, building permit was refused. The changes and construction proposed will constitute a structural change to the exterior of the building involved, and are not required by the State or City Building Codes relative to schools. The Bishop stated in his affidavit that: "My sole connection with the Sisters of St. Joseph of Chestnut Hill insofar as the land described is concerned is that as Bishop of the Diocese of Raleigh, I am charged by the Church and Canon Law with the function of a general and religious supervisor in the regulation of their activities and schools in this area."

In the light of these facts, it seems clear that the Bishop, by accepting the benefits of the provisions of the zoning ordinance waived any right he might have had to contest the validity of the ordinance. And while the Bishop has conveyed the title to the premises to the Sisters in order that private school work be carried on, permission for which was granted in the Special Use Permit of 17 February, 1949, it appears from the affidavit that he, in his official capacity, is charged by the Church and Canon Law with the function of a general and religious supervisor

in the regulation of the activities and schools in the area. It would seem, therefore, that the Bishop has supervisory power over the use to which the premises is to be devoted. And the Sisters took title to the property with full knowledge, and are estopped to challenge the validity of the ordinance under which they are permitted to conduct a private school.

For reasons stated appellant has failed to show error, for which the judgment from which appeal is taken should be disturbed.

Affirmed.

BARNHILL, C. J., took no part in the consideration or decision of this case.