PHILIP MORRIS USA, INC., PLAINTIFF v. E. NORRIS TOLSON, SECRETARY OF
REVENUE OF THE STATE OF NORTH CAROLINA, DEFENDANT

No. COA05-340

(Filed 7 March 2006)

**1. Taxation— allocation of multi-state corporate income—
alternative calculation**

Where the statute setting out the statutory formula for al-
locating multi-state corporate income to North Carolina was
amended, the trial court did not err by finding that existing orders
of the augmented Tax Review Board setting out an alternative cal-
culation were independent of the amended statutory formula.
N.C.G.S. § 105-130.4(i); N.C.G.S. § 105-130.4(t).

**2. Taxation— allocation of multi-state corporate income—
prior orders—subsequent statutory amendments**

The trial court did not err by not reading prior orders of the
augmented Taxpayer Review Board concerning the allocation of
multi-state income to North Carolina in para material with subse-
quent statutory amendments.

**3. Taxation— allocation of multi-state corporate income—
multiple orders from augmented Tax Review Board**

In an action involving the allocation of income to North
Carolina from a multi-state corporation, there was no merit to the
taxpayer's contentions that orders of the augmented Tax Review
Board did not conflict and should both be effective.

**4. Constitutional Law— separation of powers—orders of aug-
mented Tax Review Board**

Separation of powers was not violated by orders of the aug-
mented Tax Review Board which the taxpayer contended allowed
the Board to "encroach" upon the powers of the General
Assembly. Moreover, the taxpayer could not challenge the consti-
tutionality of the orders after benefitting from them.

Appeal by Plaintiff from judgment entered 29 October 2004 by
Judge Donald W. Stephens in Superior Court, Wake County. Heard in
the Court of Appeals 6 December 2005.

PHILIP MORRIS USA, INC. v. TOLSON

[176 N.C. App. 509 (2006)]

*Maupin Taylor, PA, by Charles B. Neely, Jr., Nancy S. Rendleman, Kevin W. Benedict, and Terence D. Friedman; and Morrison & Foerster, LLP, by David Agosto, for plaintiff-appellant.*

*Attorney General Roy Cooper, by Special Deputy Attorney General Kay Linn Miller Hobart, for the State.*

WYNN, Judge.

When an alternative tax formula or other method more accurately reflects a corporation's income allocable to North Carolina, the corporation shall allocate its net income for future years in accordance with the Tax Review Board.[1] Here, Philip Morris USA, Incorporated (hereafter "Taxpayer") appeals from a denial of its request of a tax refund of over $30 million based on its claim of entitlement to the benefits of both a "special tax allocation formula" under two Tax Review Board orders and a subsequently enacted corporate tax incentive formula under N.C. Gen. Stat. § 105-130.4(i) (1989). Because we hold that the tax formulas are independent alternatives, we affirm the trial court's order.

The facts pertinent to this appeal indicate that in 1979, Taxpayer began construction of a new cigarette manufacturing facility in Cabarrus County, North Carolina. On 20 March 1979, Taxpayer filed a petition with the augmented Tax Review Board[2] requesting permission to use an alternative method of allocation for North Carolina corporate income tax purposes for 1982 and subsequent years. Specifically, Taxpayer requested that the augmented Tax Review Board allow it to reduce its property and payroll factors in allocating income to North Carolina for tax years during the "start-up phase" of its new facility and then reduce only its property factor for tax years thereafter. Taxpayer specifically disavowed any modification of its sales factor, stating in its petition "[n]o adjustments are requested with respect to the sales factor."

After a hearing on 2 April 1979, the augmented Tax Review Board entered two orders, Orders 350 and 351, intended to fairly apportion Taxpayer's income to North Carolina. The Orders authorized Taxpayer to determine the percentage of its income apportioned to North

---

1. N.C. Gen. Stat. § 105-130.4(t)(4) (2005).

2. The augmented Tax Review Board is comprised of the Tax Review Board and the Secretary of Revenue as one of the decision makers for the Tax Review Board. The augmented Tax Review Board is used only in specific instances as required in sections 105-122 and 105-130.4 of the North Carolina General Statutes.

Carolina by taking the "arithmetical average" of the property, payroll and sales factors. The Orders described the property, payroll and sales factors and then reference subsections 105-130.4(j), (k), and (l) of the North Carolina General Statutes, respectively, which are the subsections statutorily defining each of the three factors. Order 350 set out a modification of the property and payroll factors for tax years 1983 through 1989, whereas Order 351 set out an indefinite modification of the property factor. Taxpayer applied the reduced property and payroll factors to calculate its income tax as set forth in Order 350 from 1983 through 1988 and paid its income tax accordingly.

Effective 1 January 1989, the General Assembly amended the statutory formula for allocating a multi-state corporation's total taxable income in North Carolina under section 105-130.4(i)to provide as follows:

$$\frac{\text{Property Factor + Payroll Factor + Sales Factor (2)}}{4} = \text{percentage of a multi-state corporation's total income taxable in North Carolina}$$

See N.C. Gen. Stat. § 105-130.4(i) (1989). Before the 1989 amendment, the three factors of property, payroll and sales were "weighted" equally in the statutory formula. However, the 1989 amendment changed the statutory formula to multiply the sales factor by two in the numerator and increased the denominator from three to four. The effect of "double-weighting" the sales factor, coupled with increasing the denominator, reduced the overall tax owed by many multi-state corporations in North Carolina.

Based on this new legislation and Taxpayer's interpretation of Orders 350 and 351, beginning in 1989 and through 1991,[3] Taxpayer determined its corporate tax liability by using the amended statutory formula (double-weighting the sales factor and dividing the total of all factors by four) as well as its reduced property factor authorized under Orders 350 and 351.

In 1993, the Department of Revenue audited Taxpayer and informed Taxpayer that the 1989 Amendment allowing corporations

---

3. Order 350 provided for the reduced payroll factor only through 1989. Therefore, in its 1989 tax filing, Taxpayer used the reduced property factor in conjunction with the amended statutory formula providing for the payroll and the double-weighted sales factor divided by four.

PHILIP MORRIS USA, INC. v. TOLSON

[176 N.C. App. 509 (2006)]

to double-weigh the sales factor and to increase the denominator from three to four did not apply in calculating Taxpayer's taxes. Accordingly, the Secretary of Revenue issued assessments against Taxpayer for tax years 1989 through 1991. Taxpayer challenged the assessments, arguing that it was required to use the three factors, whether calculated as prescribed by statute or reduced by order of the augmented Tax Review Board, in the then-governing statutory formula as amended by the 1989 Amendments. After exhausting all administrative appeals, Taxpayer paid the assessed taxes under protest and filed a refund action in Superior Court, Wake County.

On 24 October 2003, both parties filed motions for summary judgment. The trial court entered an order granting the Secretary of Revenue summary judgment with a partial refund to Taxpayer on 29 October 2004. The trial court concluded that Orders 350 and 351 required Taxpayer to use the pre-1989 statutory formula notwithstanding the 1989 Amendments. For 1990 and 1991, however, the trial court concluded that the tax based on Order 351, which required Taxpayer to use the reduced property factor and the pre-1989 statutory formula, would result in a greater tax on Taxpayer than the tax calculated under the amended statutory formula without the property factor relief. The trial court therefore voided Order 351 for 1990 and 1991, and allowed Taxpayer to apportion its income for 1990 and 1991 using the 1989 amended statutory formula minus the property factor relief granted by Order 351.[4] The trial court also ordered Defendant to refund the income taxes paid for tax years 1990 and 1991 "to the extent the amount paid by [Taxpayer] exceeded the amount due under the statutory apportionment formula for that year." Taxpayer appealed.

[1] In its first argument on appeal, Taxpayer contends that the trial court erred in ruling that Orders 350 and 351 are entirely independent from the statutory formula set forth in section 105-130.4(i) of the North Carolina General Statutes. We disagree.

North Carolina General Statute section 105-130.4(t)(3) (formerly 105-130.4(s)) provides in pertinent part:

4. There are two circumstances which may nullify an order of the augmented Tax Review Board: if there is a change in either the "business method of operation of the corporation" or the "conditions constituting the basis upon which the decision was made." *See* N.C. Gen. Stat. § 105-130.4(t) (2005). The trial court determined that the statutory formula produced a more favorable tax result for Taxpayer for 1990 and 1991, and that this was a "condition[] constituting the basis upon which the decision was made." Thus, the trial court voided Order 351 for 1990 and 1991.

(3) If the corporation shows that any other method of allocation than the applicable allocation formula prescribed by this section reflects more clearly the income attributable to the business within this State, application for permission to base the return upon such other method shall be considered by the Tax Review Board.

N.C. Gen. Stat. § 105-130.4(t)(3) (2005).[5]

Where the language of a statute is clear, the courts must give the statute its plain meaning; however, where the statute is ambiguous or unclear as to its meaning, the courts must interpret the statute to give effect to the legislative intent. *Burgess v. Your House of Raleigh, Inc.*, 326 N.C. 205, 388 S.E.2d 134 (1990). The interpretation of a statute given by the agency charged with carrying it out is entitled to great weight. *See High Rock Lake Ass'n v. N.C. Envtl. Mgmt. Comm'n*, 51 N.C. App. 275, 279, 276 S.E.2d 472, 475 (1981).

The plain language of section 105-130.4(t) demonstrates that the formula set forth in Orders 350 and 351 exists independently from and substitutes the otherwise applicable statutory allocation formula. First, section 105-130.4(t)(3) provides that the augmented Tax Review Board may consider *"any other method of allocation* than the applicable allocation formula prescribed by this section[.]" N.C. Gen. Stat. § 105-130.4(t)(3) (emphasis added). The "applicable allocation formula" is the statutorily prescribed formula in section 105-130.4(i) or, in the case of certain industries, subsections (m) through (s). "[T]his section" in section 105-130.4(t)(3) refers to section 105-130.4 of the North Carolina General Statutes. Accordingly, for Taxpayer, the "other method of allocation" permitted by the augmented Tax Review Board is in lieu of the "applicable allocation formula" in section 150-130.4(i).

The General Assembly has made clear elsewhere in section 105-130.4(t) that an alternative formula authorized by the augmented Tax Review Board substitutes the applicable statutory allocation formula. Subsection (t)(3) further states:

If the Board concludes that the allocation formula prescribed by this section allocates to this State a greater portion of the net

5. The augmented Tax Review Board is required for consideration of a multi-state corporation's request to use an alternative method of allocation of income to North Carolina under North Carolina General Statute section 105-130.4(t). Therefore, as used throughout section 105-130.4(t), the "Tax Review Board" refers to the augmented Tax Review Board. *See In re Cent. Tel. Co.*, 167 N.C. App. 14, 19-20, 604 S.E.2d 680, 684 (2004).

income of the corporation than is reasonably attributable to business or earnings within this State, it shall determine the allocable net income by *such other method as it finds best calculated to assign to this State for taxation* the portion of the corporation's net income reasonably attributable to its business or earnings within this State.

N.C. Gen. Stat. § 105-130.4(t)(3). Therefore, under section 105-130.4(t)(3), if the augmented Tax Review Board concludes that the statutory formula allocates a greater portion of the net income than is reasonably attributable to a corporation's earnings and business within the State, the augmented Tax Review Board must determine "such other method" as it finds "best calculated" to measure the appropriate portion of the corporation's income.

In the case *sub judice*, the augmented Tax Review Board followed the mandates of section 105-130.4(t)(3) and concluded that the statutorily prescribed formula for Taxpayer to calculate its taxable income in North Carolina was greater than the portion of Taxpayer's net income than was reasonably attributable to Taxpayer's earnings within the State. The augmented Tax Review Board then determined that reducing the property factor and then taking the arithmetical average of the three ratios was the method "best calculated" to measure Taxpayer's income and directed Taxpayer to allocate its income for future years in accordance with its determination. Orders 350 and 351 provide in relevant part:

B. The net income of the above classes having been separately allocated, the remaining net income of the Company (being its net apportionable income) and the Company's capital stock, surplus and undivided profits apportionable to this State under G.S. Section 105-122(c)(1) shall be apportioned to this State on the basis of the ratio obtained by *taking the arithmetical average of the following three ratios hereinafter prescribed[.]*

(Emphasis added). The augmented Tax Review Board determined in Orders 350 and 351 that the method best calculated to measure Taxpayer's income requires Taxpayer to take "the arithmetical average of the three ratios hereinafter prescribed," and it further defined how the payroll, property and sales factors are to be calculated. Thus, it is implicit that a method consisting of the arithmetical average of *four* ratios, with the *sales factor doubled*, cannot also be the method best calculated to measure Taxpayer's income. Because Taxpayer was already using the method best calculated, as determined by the

augmented Tax Review Board, to allocate its income to North Carolina as required by section 105-130.4(t)(3), the 1989 Amendment was inapplicable to Orders 350 and 351.

Likewise, section 105-130.4(t)(4) of the North Carolina General Statutes reflects the General Assembly's intent for the augmented Tax Review Board to devise methods to calculate income tax as an alternative to the statutory formula. Section 105-130.4(t)(4) provides in relevant part:

> When the Board determines, pursuant to the provisions of this subsection, *that an alternative formula or other method more accurately reflects the income allocable to North Carolina and renders its decision with regard thereto, the corporation shall allocate its net income for future years in accordance with such determination and decision of the Board* so long as the conditions constituting the basis upon which the decision was made remain unchanged or until such time as the business method of operation of the corporation changes.

N.C. Gen. Stat. § 105-130.4(t)(4) (2005). Thus, under subsection (t)(4), the augmented Tax Review Board creates an entirely new and independent "alternative formula" to which the corporation must adhere except in limited circumstances. *See also Central Tel. Co. v. Tolson*, 174 N.C. App. 554, 621 S.E.2d 186 (2005) (holding that the augmented Tax Review Board is vested with the exclusive authority to allow a corporation to use any method other than the statutory formula for apportioning income in North Carolina). Because the plain language of section 105-130.4(t) demonstrates that a formula in an augmented Tax Review Board Order is independent of, and an alternative to, the statutory formula, Taxpayer's assignment of error is without merit.

[2] Taxpayer next contends that the trial court failed to correctly apply the rules of statutory construction and that Orders 350 and 351 should be read *in pari materia* with the 1989 statutory amendments. We disagree.

In interpreting an agency order, the order "should be read as a whole." *In re Bass Income Fund*, 115 N.C. App. 703, 705, 446 S.E.2d 595, 594 (1994). Where two provisions in separate parts of an order are contradictory, the order is ambiguous. *See McLean v. McLean*, 323 N.C. 543, 548, 374 S.E.2d 376, 379 (1988) (finding that two conflicting sentences in the same section of a statute created an ambiguity in the statute). However, an order that is clear and unambiguous

must be construed using its plain meaning. *See Burgess*, 326 N.C. at 209, 388 S.E.2d at 136.

In this case, Taxpayer argues that Orders 350 and 351 require it to calculate the sales factor in accordance with the amended statute because the Orders refer to the required sales factor as "set forth and defined under G.S. Section 105-130.4(l)." Taxpayer contends this language, on its face, requires Taxpayer to "weigh" the sales factor without deviation from the statute. Taxpayer further argues that Defendant's interpretation of the Orders, that the language "arithmetical average of the following three ratios" requires a single-weighting of the sales factor, creates an ambiguity in the Orders and therefore the rules of statutory construction apply.

However, Taxpayer's argument is misguided in that the reference in the Orders to section 105-130.4(l) simply defines the sales factor and provides instruction for determining which sales must be attributed to North Carolina. *See* N.C. Gen. Stat. § 105-130.4(l) (2005). The "weight" of the factors in the statutory apportionment formula is governed by subsection (i), an entirely separate subsection of North Carolina General Statute section 105-130.4 that is not referenced in either of the Orders. *See* N.C. Gen. Stat. § 105-130.4(i) ("[a]ll apportionable income of corporations . . . shall be apportioned to this State by multiplying the income by a fraction, the numerator of which is the property factor plus the payroll factor plus twice the sales factor, and the denominator which is four."). Because subsection (l) does not address the *weight* of the sales factor, the augmented Tax Review Board's reference to it in its Orders has no impact on the weight to be given to the sales factor under the Orders as Taxpayer contends.

We therefore conclude the plain language of Orders·350 and 351 that direct Taxpayer's net income to "be apportioned to this State on the basis of the ratio by taking the arithmetical average of the following three ratios" is not ambiguous. The reference in the Orders to the sales factor in section 105-130.4(l) does not require a method of calculation contrary to the Orders' plain terms. Therefore, the rules of statutory construction, including the rule of *in para materia*, do not apply in determining the meaning of Orders 350 and 351. *See Charlotte City Coach Lines, Inc. v. Brotherhood of R.R. Trainmen*, 254 N.C. 60, 68, 118 S.E.2d 37, 43 (1961). Taxpayer's assignment of error is therefore without merit.

[3] Taxpayer next argues that subsequent orders of the augmented Tax Review Board, Orders 455 and 465, clarify that the purposes of

**PHILIP MORRIS USA, INC. v. TOLSON**

[176 N.C. App. 509 (2006)]

Orders 350 and 351 do not conflict and that both orders should be given effect. This argument is also without merit.

Although Taxpayer believed that Order 351 already granted the relief requested, Taxpayer filed petitions with the augmented Tax Review Board in 1997 and again in 1999 requesting the same modification of the statutory property factor requested in the 1979 Petition, but clarified in the 1997 and 1999 Petitions that the sales factor would be double-weighted. In granting Taxpayer's request to modify the property factor and to double-weight the sales factor in both petitions, Orders 455 and 465 provide that Taxpayer must calculate the tax owed to North Carolina "by using the arithmetical average of the *three* factors of property, payroll and sales, with the sales being doubled." (Emphasis added). However, in calculating its income tax returns for 1995 through 1999, Taxpayer took the sum of the modified property factor, the payroll factor, and the doubled-sales factor, and divided the sum by *four*. Taxpayer asserts that since the Department of Revenue accepted the apportionment formula that Taxpayer used when filing its income tax returns for 1995 through 1999, it confirmed that the purposes of Orders 350 and 351 and the 1989 Amendments are different, and that Orders 350 and 351 and the 1989 Amendments should be given effect.

Contrary to Taxpayer's assertion, the record reveals that the Department of Revenue did not accept the apportionment formula Taxpayer used in filing its income tax returns for 1998 and 1999. The Department of Revenue issued proposed notices of tax assessments against Taxpayer based on its failure to comply with the original language of Order 465 by dividing the sum of the factors by four instead of three, as required by the Order. This proposed assessment also provided that if the augmented Tax Review Board amended the language in Order 465, the assessment would be cancelled.

The augmented Tax Review Board did, in fact, amend the language in both Orders 455 and 465 in subsequent orders issued 10 and 24 October 2003.[6] In the October 2003 orders, the augmented Tax

6. Taxpayer argues in its Reply Brief that Defendant violated provisions of the administrative code in filing its Motion to Amend Orders 455 and 465 with the augmented Tax Review Board because any modification of an order must be initiated by the Taxpayer, citing N.C. Gen. Stat. § 105-130.4(t)(1) (2005) ("[p]etitions to the [augmented] Tax Review Board . . . can only be initiated by the taxpayer."). However, there is no evidence in the record to show that Taxpayer has exhausted all administrative remedies to challenge the validity of Taxpayer's motion or the subsequent orders issued by the augmented Tax Review Board amending Orders 455 and 465. Accordingly, this issue is not properly before this Court.

Review Board struck the language, "shall be apportioned to North Carolina by using the arithmetical average of the *three* factors of property, payroll, and sales with the sales factor being doubled as hereinafter prescribed" in Orders 455 and 465, and substituted the language with the phrase, "shall be apportioned to North Carolina by a fraction, the numerator of which is the property factor plus the payroll factor plus twice the sales factor, all as defined herein, and the denominator which is *four*." Thus, unlike Orders 350 and 351, the amended language in Orders 455 and 465 explicitly provides that Taxpayer should use the sum of the modified property factor, the payroll factor, and the doubled sales factor, and divide the sum by four. Because the amended language of Orders 455 and 465 expressly permits Taxpayer to double the sales factor and divide the sum of all factors by four and the language in Orders 350 and 351 does not, Taxpayer's assignment of error is without merit.

[4] In its final argument on appeal, Taxpayer contends that the trial court erred in its construction of Orders 350 and 351 by effectively granting to the augmented Tax Review Board powers greater than those of the General Assembly, thereby violating the separation of powers doctrine. Taxpayer argues the trial court's interpretation of Orders 350 and 351 creates a fundamental violation of separation of powers because it permits the augmented Tax Review Board, which is part of the executive branch of government, to "encroach" upon the General Assembly, the legislative branch of government. This argument is without merit.

To establish a violation of separation of powers, Taxpayer must demonstrate that one branch of State government has exercised powers that are reserved for another branch of State government. *Ivarsson v. Office of Indigent Defense Servs.*, 156 N.C. App. 628, 631, 577 S.E.2d 650, 652, *disc. review denied*, 357 N.C. 250, 582 S.E.2d 269 (2003). An improper exercise of properly delegated authority, even if proven, is wholly insufficient to establish a separation of powers violation. Rather, it must be proven that one branch of State government exercised a power reserved for another branch of government. *Id.*

Here, the augmented Tax Review Board only exercised the powers expressly reserved for it by the General Assembly under North Carolina General Statute section 105-130.4(t). The General Assembly specifically set forth the procedures and circumstances under which the augmented Tax Review Board may grant an order, how long, and

under what conditions that order shall remain effective. *See* N.C. Gen. Stat. § 105-130.4(t). In devising a unique formula for Taxpayer to calculate its taxes that was separate and distinct from the statutory formula, the augmented Tax Review Board did not exercise any powers reserved for any other branch of government.

Taxpayer's argument that the trial court's interpretation of Orders 350 and 351 preempted any change the legislature may have enacted, including the 1989 Amendments, is also without merit. As we have already determined, an order of the augmented Tax Review Board stands as an independent, alternative to the statutory formula. Moreover, Taxpayer, at all times, could have sought modification of an order of the augmented Tax Review Board under North Carolina General Statute section 105-130.4(t)(3).

Finally, Taxpayer cannot now challenge the constitutionality of Orders 350 and 351 after Taxpayer has benefitted from the orders. "[O]ne who voluntarily proceeds under a statute and claims benefits thereby conferred will not be heard to question [the statute's] constitutionality in order to avoid its burdens." *Shell Island Homeowners Ass'n v. Tomlinson*, 134 N.C. App. 217, 226, 517 S.E.2d 406, 413 (1999) (quoting *Convent of Sisters of St. Joseph v. Winston-Salem*, 243 N.C. 316, 324, 90 S.E.2d 879, 885 (1956)). "This principle also applies to questioning the rules or actions of state commissions." *Convent of Sisters*, 243 N.C. at 324, 90 S.E.2d at 885.

Here, Taxpayer "sought, received and took full advantage of a variance" from the applicable statutory formula granted under North Carolina General Statute section 105-130.4(t) and is therefore precluded from challenging that variance on constitutional grounds. *See Shell Island*, 134 N.C. App. at 227, 517 S.E.2d at 414 (holding that because plaintiffs "sought, received and took full advantage of" a variance granted pursuant to a regulatory scheme, they were precluded from asserting that the regulatory scheme was unconstitutional).

Accordingly, because the trial court's interpretation of Orders 350 and 351 did not create a separation of powers violation and Taxpayer benefitted from the statute which it now claims is unconstitutional, Taxpayer's assignment of error is without merit.

Affirmed.

Chief Judge MARTIN and Judge STEELMAN concur.