AMWARD HOMES, INC., ANGE CONSTRUCTION COMPANY, BLUEPOINT HOMES, INC., HOMESCAPE BUILDING COMPANY, IMPACT DESIGN-BUILD, INC., JOHN LEGGETT AND COMPANY, POYTHRESS CONSTRUCTION COMPANY, INC., POYTHRESS HOMES, INC., WARDSON CONSTRUCTION, INC., WHG, INC. D/B/A TIMBERLINE BUILDERS, AND ZEIGLER & COMPANY, PLAINTIFFS v. TOWN OF CARY, A BODY POLITIC AND CORPORATE, DEFENDANT

TRADITION AT STONEWATER I, LP, PLAINTIFF-INTERVENOR v. TOWN OF CARY, A BODY POLITIC AND CORPORATE, DEFENDANT TO CLAIM OF PLAINTIFF-INTERVENOR

No. COA09-923

(Filed 3 August 2010)

### 1. Jurisdiction— subject matter jurisdiction—school impact fees—claims not moot—plaintiffs had standing

The trial court and the Court of Appeals had subject matter jurisdiction over a case involving school impact fees charged to plaintiff homebuilders by the Town of Cary pursuant to the Adequate Public School Facilities ordinance.

### 2. Cities and Towns— actions ultra vires—school impact fees

The trial court did not err in granting summary judgment in favor of plaintiff homebuilders on their claims to recover school impact fees paid to the Town of Cary because the Town had no authority to enact or enforce the Adequate Public School Facilities ordinance or Condition 17 of the development proposal which outlined the fees.

### 3. Statutes of Limitation and Repose— claims not barred—recovery of school impact fees

Plaintiff homebuilders' claims to recover school impact fees paid to the Town of Cary pursuant to the Adequate Public School Facilities ordinance were not barred by the two-month statute of limitations contained in N.C.G.S. § 160A-364.1; the ten-year statute of limitations in N.C.G.S. § 1-56 applied to plaintiffs' claims under Article I, section 19 of the North Carolina Constitution.

### 4. Estoppel— no benefit received—claims not barred

Plaintiffs' claims to recover school impact fees paid to the Town of Cary were not barred by the doctrine of estoppel. Plaintiffs were forced to participate in the Town's illegal custom and practice of imposing and accepting the fees and the Town

AMWARD HOMES, INC. v. TOWN OF CARY

[206 N.C. App. 38 (2010)]

failed to show that plaintiffs received any benefit under the Adequate Public School Facilities ordinance or Condition 17 of the approved development proposal.

**5. Constitutional Law— substantive due process—summary judgment proper**

The trial court correctly concluded that plaintiff home-builders were entitled to summary judgment on their substantive due process claims concerning school impact fees paid to the Town of Cary. Plaintiffs demonstrated a fundamental property interest protected by the Fourteenth Amendment of the North Carolina Constitution and proved that they were deprived of this property interest by government action that had no rational relation to a valid state objective.

**6. Constitutional Law— equal protection—summary judgment proper**

The trial court did not err in granting plaintiff homebuilders summary judgment on their claims to recover school impact fees paid to the Town of Cary as the Town violated plaintiffs' equal protection rights. Plaintiffs were intentionally treated unequally by the Town compared to similarly situated entities and there was no rational basis for the Town's disparate treatment.

**7. Attorney Fees— substantive due process and equal protection claims—award proper**

The trial court did not err by ordering the Town of Cary to pay plaintiff home builders' attorney fees pursuant to 42 U.S.C. § 1988(b) in an action concerning school impact fees paid to the Town. The Town violated plaintiffs' substantive due process and equal protection rights.

JACKSON, Judge, dissenting.

Appeal by defendant from orders entered 5 March 2009, 1 April 2009, and 2 April 2009 by Judge Carl R. Fox in Wake County Superior Court. Heard in the Court of Appeals 9 February 2010.

*K&L Gates, LLP, by William J. Brian, Jr., and Nathaniel C. Parker, for plaintiff appellees.*

*The Brough Law Firm, by Michael B. Brough; and Womble Carlyle Sandridge & Rice, PLLC, by Burley B. Mitchell, Jr., John C. Cooke, and Michael T. Henry, for defendant appellant.*

*J. Michael Carpenter and Stam Danchi & Donaldson, PLLC, by Paul Stam, for Amicus Curiae Home Builders Association of Raleigh-Wake County and the North Carolina Home Builders Association.*

HUNTER, JR., Robert N., Judge.

In 2003, Jerry Turner & Associates, the developer of a proposed subdivision called Cameron Pond, submitted a subdivision proposal to the Town of Cary. The proposal sought permission from the Town to subdivide a 143-acre tract of land into 417 dwelling units. The Town of Cary approved the subdivision proposal, which contained a condition providing that no building permit would be issued within Cameron Pond unless building applicants paid a fee, pursuant to a set schedule, for the funding of schools in the Town of Cary. Under the proposal's terms, the developer of Cameron Pond would receive the benefit of the subdivided property, while the home builders seeking building permits would be required to pay the fees. No fees were required to be paid by the developer. According to the language of the condition, the fees paid by the builders satisfied the requirements of one of the Town's ordinances.

The builders in Cameron Pond—Amward Homes, Inc., Ange Construction Company, Bluepoint Homes, Inc., Homescape Building Company, Impact Design-Build, Inc., John Leggett and Company, Poythress Construction Company, Inc., Poythress Homes, Inc., Wardson Construction, Inc., WHG, Inc. d/b/a Timberline Builders, and Zeigler & Company (collectively "plaintiffs")—paid the fees under the condition for approximately four years before filing this action to recover the fees. The amount is around $600,000 as of the filing of this appeal. The trial court granted plaintiffs' motion for summary judgment and found that (1) the Town of Cary had violated plaintiffs' due process and equal protection rights under the United States and North Carolina Constitutions, and (2) the condition and ordinance requiring the fees were void and *ultra vires*. The Town has filed this appeal.

After careful review, we hold: (1) the Town of Cary engaged in *ultra vires* acts by accepting the fees pursuant to the condition and the subdivision ordinance, (2) plaintiffs' causes of action are not barred by the statute of limitations, (3) plaintiffs are not estopped from bringing their claims against the Town, (4) the Town of Cary violated plaintiffs' rights to due process and equal protection under the North Carolina and United States Constitutions, and (5) the trial

AMWARD HOMES, INC. v. TOWN OF CARY

[206 N.C. App. 38 (2010)]

court did not abuse its discretion in awarding plaintiffs attorneys' fees and costs. Accordingly, we affirm the trial court's orders.

## BACKGROUND

On 22 July 1999, the Town of Cary enacted an "Adequate Public School Facilities" ordinance (the "APSFO") for the following stated purpose: "The purpose of this part is to ensure that, to the maximum extent practical, new residential developments will be approved by the Town of Cary only when it can reasonably be expected that adequate public school facilities will be available to accommodate such new developments." Under the APSFO as first adopted, developers could gain zoning approval for a new planned unit development ("PUD") by satisfying one of two requirements: (1) obtain a Certificate of Adequate Educational Facilities ("CAEF") from Wake County Public Schools certifying that adequate school facilities were available to accommodate residents of new homes, or (2) qualify for an exemption from the APSFO by either building in a low population density area or constructing an affordable housing project.

At the time the APSFO was first enacted, Cary's Town Council was aware that they did "not control the provision of public school facilities," because the authority to build, fund, and manage schools fell within the exclusive province of the Wake County Public School System ("WCPSS") and the Wake County Board of Commissioners ("WCBC"). In an effort to shore up their authority to enforce the APSFO, members of Cary's Town Council attempted to enter into a Memorandum of Understanding between the Town, WCPSS, and WCBC. The school board for WCPSS approved the memorandum, but the WCBC declined to adopt it. The resulting agreement between WCPSS and the Town of Cary was outlined in a non-binding memorandum of understanding whereby the Town and WCPSS agreed to "work cooperatively" to meet certain target percentages for school enrollment capacity over a five-year period. In order to achieve these target percentages, the parties agreed to these provisions in the memorandum of understanding:

Adequate Public Facilities Ordinance (APFO). The Town will adopt an ordinance to limit the approval of major residential developments within the Town's jurisdiction to those that can be adequately served with existing or proposed school facilities.

Establishment of Procedure to Issue Certificates of Adequate Education Facilities (CAEF's). The School System will establish

an administrative review process to receive and take action upon applications for . . . [CAEF's] submitted by developers who are required by the Town's [APSFO] to have such certificates before obtaining subdivision or site plan approval from the Town.

The School System will issue a CAEF for a proposed development if it concludes that, given the number of school age children projected to reside in that development, and considering all of the factors listed below, the number of students projected to attend the Wake County elementary, middle, and high schools that serve the corresponding attendance districts where the development site is located will not exceed the standards specified in paragraph 1 above.

(Underlining added.) The memorandum listed a set of factors to be considered by WCPSS in making its determination to grant a CAEF, including current student population in the area of the proposed development, future and ongoing school construction, funding for school construction projects, increases in enrollment, Cary's population growth, changes in district boundaries, and any other factor deemed relevant by WCPSS.

Neither the memorandum of understanding nor the APSFO granted the Town of Cary the authority to charge fees to developers or builders as part of the subdivision application process for the purpose of funding schools.

On 16 November 2001, the Town of Cary approved a PUD application for a subdivision called "Cary Park." The developers of Cary Park sought permission to develop 484 acres within Cary's town limits into 2,744 residential dwelling units. As part of the approved proposal, Cary Park agreed to build an elementary school for $5,500,000.00. With respect to Cary's APSFO, the agreement contained an acknowledgment provision where the parties agreed that Cary Park's payment for the school satisfied the APSFO, even though the APSFO at this time did not allow the Town to grant an exception on such grounds.

(c) It is acknowledged and agreed that the performance of its obligations under this Paragraph 1(a) [construction of the school] by [Cary Park] shall satisfy all requirements of . . . Cary Park with respect to the Town's Adequate Public Facilities Ordinance for Schools.

On 10 October 2002, Cary's Town Council approved a development plan submitted by Jerry Turner & Associates ("Amberly"). In-

AMWARD HOMES, INC. v. TOWN OF CARY

[206 N.C. App. 38 (2010)]

stead of paying for a school to comply with the APSFO like Cary Park, Amberly agreed to pay a fee directly to the Town of Cary with every building permit issued for units to be built in the development. The fee schedule, as reflected in the Town Council's meeting minutes, provided:

Amberly's Proposal for Compliance with Cary's APF for Schools

| One bedroom | $500 per dwelling |
| --- | --- |
| Two bedroom | $1,000 per dwelling |
| Three bedroom | $2,000 per dwelling · |
| Four bedroom | $3,000 per dwelling |
| Over four bedrooms | $1,000 per bedroom over four, in addition to the four-bedroom amount |

This schedule was proposed by Amberly after the Planning and Zoning Board meeting but prior to the meeting of Cary's Town Council. According to the proposal, the fees were to be paid directly to the Town of Cary for school development. Between September 2002 and January 2003, Cary's Town Council approved the same payment fee schedule under the APSFO for subdivisions named "Stonewater," "Village at the Park," and "Riggsbee Farm." Other proposals for developments, in particular the proposals for subdivisions "Glenkirk" and "Huggins Glen," paid a flat fee of $2,000 per unit rather than a dollar amount per bedroom.

On 8 May 2003, Cary's Town Council approved a development proposal by Cameron Pond Development, LLC ("Cameron Pond"). In Cameron Pond's proposal for a new PUD, the developer included a fee schedule to comply with the APSFO:

17. Upon issuance of a building permit for each residential dwelling unit within Cameron Pond, Cameron Pond or its designee will pay the Town the following amount based on the size of the dwelling to comply with the Town's [APSFO] for schools:

- One bedroom—        $500 per dwelling
- Two bedroom—        $1,000 per dwelling
- Three bedroom—      $2,000 per dwelling
- Four bedroom—       $3,000 per dwelling
- Over four bedrooms— $1,000 per bedroom

AMWARD HOMES, INC. v. TOWN OF CARY

[206 N.C. App. 38 (2010)]

This condition ("Condition 17") traveled with the lots that were sold in Cameron Pond, and plaintiffs paid a fee according to the above schedule in order to acquire a building permit to construct a new home in the development. As a group, plaintiffs in Cameron Pond allege that, as of the filing of this appeal, they have paid over $600,000.00 in fees to comply with the APSFO.

In explaining why all these development proposals contained fees for schools—even though the APSFO contained no language regarding any fees whatsoever—a managing partner of Cameron Pond, Glenn Futrell, provided the following in his affidavit:

> 5. The Cameron Pond PUD application was prepared and initially submitted in November 2002. In connection with the PUD application, I attended several meetings with Town staff and officials to discuss the proposed development and the conditions or amendments that would be necessary to obtain approval of the project by the Town Council.

> 6. On more than one occasion during the approval process, I met with then-Mayor Glen Lang to discuss the Cameron Pond PUD. One of the topics discussed during these meetings was the manner in which the applicant would comply with the Town's Adequate Public Facilities Ordinance ("APFO") for Schools. I was informed that the Town Council, and Mr. Lang in particular, expected the applicant to include a condition in the PUD requiring the payment of fees for school capacity based on the number of bedrooms within each dwelling unit in order to comply with the APFO.

> 7. During our meetings, Mr. Lang expressed his strong desire for developers to enable the Town to make expenditures on schools within the Town's borders by paying school fees. I also understood that Mr. Lang controlled enough votes on the Town Council to insure that any application that did not comply would be denied.

> 8. I was informed and understood that the Cameron Pond PUD would not be approved by the Town Council unless we accepted a condition requiring the payment of school fees. This was consistent with my prior dealings with the Town of Cary on other projects and the information that had been conveyed to me in connection with other residential PUD approvals.

Project managers and other people involved with the PUD applications for Stonewater, Glenkirk, Cary Park, Amberly, Village at the Park, Riggsbee Farm, and Huggins Glen recounted similar stories during the application process.

On 1 July 2003, the Town of Cary amended the APSFO to officially allow the Town to accept fees to waive the requirements of the APSFO. In adding an exemption to the APSFO via payment of fees, the new ordinance read in part:

3.18.2  Certificate of Adequate Educational Facilities (CAEF)

    (A) Except as provided by Section 3.18.6 below, no subdivision plan or site plan may be approved unless on the date of such approval there exists a valid and current Certificate of Adequate Educational Facilities (CAEF) applicable to the project for which such approval is sought.

    (B) A CAEF must be obtained from the Wake County Public School System in accordance with Section 3.18.4 below. The School System will issue or deny a CAEF in accordance with the provisions of the Memorandum of Understanding between the Town, and the Wake County Public School System, dated July 22, 1999.

. . . .

    (D) CAEF's attach to the land in the same way that development permission attaches to the land. CAEF's may be transferred along with other interests in the property with respect to which they are issued, but may not be severed or transferred separately.

. . . .

3.18.6  Exemption From Certification Requirement for Small, Low Density, and Affordable Housing Development Projects

    (A) A CAEF shall not be required, if the gross density of the proposed residential subdivision development does not exceed (i) one dwelling unit per two acres of the development tract, or (ii) the project is exempt from subdivision plan or site plan approval as allowed under the provisions of this Ordinance.

(B) In addition, the Town Council may waive the require-
ments of this Ordinance in the case of affordable
housing projects[.] . . .

(C) *The Town Council may also exempt proposed de-
velopments from the requirements of this Section on
a case-by-case basis if the proposed develop-
ment provided funds per unit to support new school
development.*

(Emphasis added.) Under these amended procedures, a developer
seeking to start a new housing development could gain permission
from the Town of Cary if he or she either: (1) obtained a CAEF from
Wake County Public Schools, (2) qualified for exemption due to low
population density or the construction of an affordable housing proj-
ect, or (3) offered a sufficient amount of money per home built to be
paid to the Town of Cary directly for funding schools.

The amended APSFO was effective for about 14 months before it
was repealed. On 9 September 2004, the Town of Cary repealed the
APSFO by adopting the following resolution.

3.18 ADEQUATE PUBLIC SCHOOL FACILITIES (REPEALED
9/9/04)

The repeal of this section (Adequate Public School Facilities)
shall be effective upon adoption and such repeal shall apply to
applications for approval of subdivision plans or site plans
that are submitted for approval by the Town after the effective
date of repeal *unless the property for which subdivision or
site plan approval is sought is subject to a zoning condition
or a developer agreement that requires compliance with this
(the Adequate Public School Facilities) ordinance. These
properties/planned developments include Cary Park (Rezoning
Case # 00-REZ-04), Glenkirk (02-REZ-15), Cameron Pond
(02-REZ-27), Amberly (02-REZ-05), Stonewater [()02-REZ-08),
Village at the Park (02-REZ-06), Huggins Glen—currently
know[n] as The Battery (02-REZ-26), and Riggsbee Farm—
currently known as Stonecreek Village (02-REZ-23).*
If the property is subject to a developer agreement or zoning
condition or other approval requiring or contemplating com-
pliance, then such property shall be subject to the requirements
of the developer agreement or zoning approval which shall be
interpreted in terms of this ordinance as it exists immediately

before repeal, unless such requirement is modified or removed after review on a case by case basis.

(Emphasis added.) Because this repeal excluded Cameron Pond from the repealed requirements of the APSFO, builders applying for building permits in Cameron Pond continued to pay fees under Condition 17 to the Town of Cary.

On 27 September 2007, plaintiffs filed suit against the Town of Cary. In the complaint, plaintiffs sought: (1) an accounting; (2) a declaration that the fees under the APSFO were beyond the Town's statutory authority under N.C. Gen. Stat. § 160A-4 (2009); (3) a declaration that the APSFO violated plaintiffs' rights to equal protection and substantive due process under the United States and North Carolina Constitutions; (4) a declaration that the July 2003 amendment to the APSFO allowing for fees was beyond the statutory authority of the Town in violation of N.C.G.S. § 160A-4; (5) a declaration that the July 2003 amendment to the APSFO violated the plaintiffs' rights to equal protection and substantive due process; (6) a declaration that the repeal of the APSFO was beyond the Town's statutory authority; (7) a declaration that the repeal of the APSFO violated the plaintiffs' equal protection and substantive due process rights; (8) a declaration that the enforcement of the original APSFO, the July 2003 amendment to the APSFO, and the repeal of the APSFO via the collection of fees was beyond the statutory authority of the Town; (9) a declaration that the enforcement of the original APSFO, the July 2003 amendment to the APSFO, and the repeal of the APSFO via the collection of fees violated plaintiffs' equal protection and substantive due process rights under the North Carolina and United States Constitutions; (10) an injunction ordering a refund of the fees paid to the Town, a prohibition of the collection of further fees, and an accounting; and (11) damages under 42 U.S.C. § 1983 (2009)[1] and Article I, section 19[2] of the North Carolina Constitution.

---

1. Every person who, under color of any statute, ordinance, regulation, *custom, or usage,* of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983 (emphasis added).

2. **Sec. 19. Law of the land; equal protection of the laws.**

No person shall be taken, imprisoned, or disseized of his freehold, liberties, or privileges, or outlawed, or exiled, or in any manner deprived of his life, liberty, or property, but by the law of the land. No person shall be denied the

On 6 May 2008, Stonewater motioned the trial court to intervene in plaintiffs' action, and the motion was granted on 25 July 2008. Plaintiffs thereafter filed a motion for summary judgment on 12 January 2009, and the Town of Cary filed a competing motion for summary judgment on 13 February 2009.

On 5 March 2009, the trial court granted summary judgment to plaintiffs and denied the Town of Cary's motion for summary judgment. In finding for plaintiffs as a matter of law, the trial court explained in its order:

a. Pursuant to N.C. Gen. Stat. § 1-253, *et seq.*, the Court hereby declares:

    i. that any obligation of Plaintiffs to pay fees or monies pursuant to Condition 17 of the Cameron Pond Planned Unit Development ("PUD") and/or the Town of Cary's [APSFO], as amended, including without limitation the ordinance passed by the Town on September 9, 2004, is invalid, unenforceable, void and of no legal effect; and

    ii. that the Defendant has violated Plaintiffs' rights to equal protection and due process as provided by Article I, Section 19 of the North Carolina Constitution and the Fourteenth Amendment to the United States Constitution.

The Town of Cary made a motion to amend the summary judgment order to add a certification for appeal pursuant to Rule 54(b) of the North Carolina Rules of Civil Procedure, and the trial court granted defendant's motion and filed an amended order on 1 April 2009. On 2 April 2009, the trial court granted plaintiffs' motion for attorneys' fees and costs under 42 U.S.C. § 1988(b) (2009) and awarded plaintiffs $368,008.82.

The Town of Cary filed a timely notice of appeal on 6 April 2009, and has raised seven issues for this Court: (1) whether the trial court and this Court lack subject matter jurisdiction over plaintiffs' claims and this appeal; (2) whether plaintiffs' claims are barred by the applicable statute of limitations; (3) whether plaintiffs' causes of action are barred by the doctrine of estoppel; (4) whether Condition 17 is outside the scope of the Town of Cary's authority; (5) whether

---

equal protection of the laws; nor shall any person be subjected to discrimination by the State because of race, color, religion, or national origin.

N.C. Const. art. I, § 19.

the Town of Cary violated plaintiffs's due process rights; (6) whether the Town of Cary violated plaintiffs' equal protection rights; and (7) whether the trial court erred in awarding plaintiffs' attorneys fees.

## ANALYSIS

### I. Jurisdiction and Standard of Review

We note that this appeal is interlocutory given that plaintiff-intervenor Stonewater's causes of action against the Town are still pending in the trial court. *Embler v. Embler*, 143 N.C. App. 162, 164, 545 S.E.2d 259, 261 (2001) (orders made during the pendency of an action not disposing of entire controversy at trial are interlocutory). However, where the trial court certifies an order under N.C.R. Civ. P. 54(b) (2010), jurisdiction in this Court is proper. *Sharpe v. Worland*, 351 N.C. 159, 162, 522 S.E.2d 577, 579 (1999) ("When the trial court certifies its order for immediate appeal under Rule 54(b), appellate review is mandatory."); *see Oestreicher v. Stores*, 290 N.C. 118, 127, 225 S.E.2d 797, 803 (1976) (trial court is a "dispatcher" and determines "the appropriate *time when each 'final decision'* upon 'one or more but less than all' of the claims in a multiple claims action is ready for appeal") (citation omitted); *Trull v. Central Carolina Bank*, 117 N.C. App. 220, 450 S.E.2d 542 (1994) (jurisdiction proper where summary judgment granted to one defendant but fewer than all defendants on all of the plaintiff's claims), *aff'd in part and disc. review improvidently allowed in part*, 347 N.C. 262, 490 S.E.2d 238 (1997). In this case, given that summary judgment was granted in favor of plaintiffs on all their claims against the Town, and only the claims of Stonewater remain at trial, it is apparent that the trial court's order is "a final judgment as to one . . . but fewer than all of . . . [the] parties," and we agree that there is "no just reason for delay." N.C.R. Civ. P. 54(b). Jurisdiction in this Court is accordingly proper under Rule 54(b).

"We review orders granting summary judgment *de novo.*" *Self v. Yelton*, 201 N.C. App.653, 658, 688 S.E.2d 34, 37 (2010). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.R. Civ. P. 56(c) (2010). The burden rests initially on the moving party to show that there exists no genuine issue of material fact. *Self*, 201 N.C. App. at 658, 688 S.E.2d at 38. "If a moving party shows that no genuine issue of material fact exists for trial, the burden shifts to the nonmovant to adduce specific facts establishing a triable issue." *Id.*

## II.  Subject Matter Jurisdiction

[1]  The Town of Cary argues that the trial court and this Court lack subject matter jurisdiction over this case for two reasons: (1) the APSFO was repealed, rendering plaintiffs' causes of action moot; and (2) plaintiffs lack standing to challenge the APSFO, because the sole reason plaintiffs had to pay the scheduled fees was due to Condition 17 rather than the APSFO itself. We do not agree.

### A.  Mootness

"Whenever, during the course of litigation it develops that the relief sought has been granted or that the questions originally in controversy between the parties are no longer at issue, the case should be dismissed, for courts will not entertain or proceed with a cause merely to determine abstract propositions of law." *In re Peoples*, 296 N.C. 109, 147-48, 250 S.E.2d 890, 912 (1978). "Repeal of a challenged law generally renders moot the issue of the law's interpretation or constitutionality." *Property Rights Advocacy Grp. v. Town of Long Beach*, 173 N.C. App. 180, 183, 617 S.E.2d 715, 718, *appeal dismissed and disc. review denied*, 360 N.C. 177, 626 S.E.2d 649 (2005), *aff'd per curiam*, 360 N.C. 474, 628 S.E.2d 768 (2006). "However, the repeal of a challenged statute does not have the effect of mooting a claim arising under that statute in the event that . . . the repeal of the challenged statute does not provide the injured party with adequate relief or the injured party's claim remains viable." *Bailey and Associates, Inc. v. Wilmington Bd. of Adjustment*, 202 N.C. App. 177, 182, 689 S.E.2d 576, 582 (2010).

In this case we are presented with an ordinance exempting specific parties from the effect of a repeal. Plaintiffs have filed this action for the dual purposes of (1) reclaiming the APSFO fees they have already paid and (2) preventing the Town of Cary from charging any further fees under Condition 17. Since the repeal of the APSFO here does not redress either of these claims, clearly the issues raised in this case are still viable and not moot.

### B.  Standing

"Standing refers to whether a party has a sufficient stake in an otherwise justiciable controversy such that he or she may properly seek adjudication of the matter." *Property Rights Advocacy Group*, 173 N.C. App. at 182, 617 S.E.2d at 717 (citation and internal quotation marks omitted). "Standing to challenge the constitutionality of a legislative enactment exists where the litigant has suffered, or

is likely to suffer, a direct injury as a result of the law's enforcement." *Maines v. City of Greensboro*, 300 N.C. 126, 130-31, 265 S.E.2d 155, 158 (1980).

The Town of Cary's contention that plaintiffs lack standing rests on the nature of Condition 17. The Town asserts that Condition 17 is only a rezoning condition which was not mandated by the APSFO at the time Cameron Pond was approved as a subdivision, and based on this fact, the Town contends that plaintiffs' predecessor-in-interest voluntarily agreed to the condition now causing plaintiffs' damages. The Town argues that since Condition 17 is the sole source of injury, and it was caused by the developer of Cameron Pond, plaintiffs lack standing to pursue their claims against the Town.

This argument by the Town of Cary regarding the voluntariness of Condition 17 is, in reality, a sword with two edges. In accepting Cameron Pond's subdivision proposal, the Town voluntarily accepted the plain, unambiguous language of Condition 17: "Upon issuance of a building permit for each residential dwelling unit within Cameron Pond, Cameron Pond or its designee will pay the Town the following amount based on the size of the dwelling *to comply with the Town's [APSFO] for schools*[.]" (Emphasis added.) If the Town did not wish this language regarding the APSFO to be part of Condition 17, there existed ample time to change the language prior to the adoption of Cameron Pond's proposal. As it stands, Condition 17 is patently connected to the APSFO as it existed at the time the proposal was accepted by Cary's Town Council. Thus, plaintiffs have standing to challenge the Town's imposition of fees purportedly due to the requirements of the APSFO.

### III. Ultra Vires

[2] The Town of Cary argues that Condition 17 is not *ultra vires*. We disagree.

In *Union Land Owners Ass'n v. County of Union* [*Union*], this Court examined the imposition of school impact fees similar to those at issue in this case, and concluded that there exists no statutory authority for such fees. 201 N.C. App. 374, 381, 689 S.E.2d 504, 508 (2009) ("Defendant [Union County] may not use the APFO to obtain indirectly the payment of what amounts to an impact fee given that defendant lacks the authority to impose school impact fees directly."). In its reply brief, the Town attempts to distinguish *Union* on a variety of grounds which we now address.

The Town contends that *Union* is distinguishable because: (1) in *Union*, the mechanism for imposing the fees was through an ordinance, and in this case the device is Condition 17; and (2) the developers in *Union* had their projects delayed if they did not pay the fees, and in this case the developer was never delayed due to the APSFO. Neither of these arguments have merit.

As discussed *supra*, Condition 17 is inextricably tied to the APSFO by the language accepted by the Town. The language of Condition 17 is a reflection of the Town's interpretation of the APSFO, its own ordinance, at the time it approved Cameron Pond. Thus, the Town cannot now claim that the fees paid were not pursuant to the APSFO. Moreover, whether a project was delayed due the APSFO has no bearing on the issue of *ultra vires*—either the Town had the authority to accept fees or it did not. To answer this question, we now examine our holding in *Union* to determine whether Condition 17 is *ultra vires*.

In *Union*, the County contended that three sources of authority supported its APFO: "(1) statutes relating to the county police power, (2) zoning statutes, and (3) subdivision statutes." 201 N.C. App. at 377, 689 S.E.2d at 506. Under the APFO adopted by Union County, the county could approve a subdivision plan that adversely affected school capacity by satisfying one of the following conditions:

> (1) deferring approval for five years; (2) postponing development until school capacity becomes available; (3) scheduling the development to match the rate of school capacity growth; (4) redesigning the proposed development to reduce the impact on school capacity; (5) requesting minor plat approval so as to exempt the proposed development from APFO conditions; (6) offsetting any excess impact on school capacity resulting from the proposed development by providing a VMP [Voluntary Mitigation Payment] to the County; (7) constructing school facilities to offset the proposed development's impact in excess of estimated school capacity; or (8) satisfying, with defendant's approval, other reasonable conditions offsetting the proposal's impact on the capacity of schools serving the proposed development.

*Id.* at 376, 689 S.E.2d at 505. The VMP's in *Union*, like those at issue here, were proposed at the subdivision proposal phase, and the County chose to deny or accept subdivision proposals, in part, based on whether the VMP's were adequate. *Id.* In holding that the APFO in *Union* was beyond the County's authority, this Court held:

Therefore, because our Constitution places the duty to fund public schools on the General Assembly and local governments and because the General Assembly has neither expressly nor impliedly authorized defendant to shift that duty using subdivision ordinances that impose fees or use similar devices upon developers of new construction, we hold that defendant's adoption of an APFO that includes a VMP and similar measures was in excess of its statutory authority.

*Id.* at 381, 689 S.E.2d at 508.

Condition 17 plainly falls within the scope of our holding in *Union.* The Town of Cary had no statutory authority to adopt the APSFO or accept fees under it, and Condition 17 and the APSFO illegally shifted the burden of paying for public education to the subdivision builder-plaintiffs in this case. Moreover, even though *Union* was not decided until after the Town of Cary adopted the APSFO, the Town should have known that Condition 17 was *ultra vires*, because the APSFO at the time Cameron Pond was approved gave the Town no authority to accept fees in lieu of satisfying the APSFO's requirements. The record clearly shows, contrary to the Town's explanations, that upon the adoption of the APSFO in this case, the Town of Cary entered into a custom and practice of accepting fees pursuant to the APSFO. The Town has failed to establish even a colorable claim that the acceptance of these fees was within the Town's authority, and accordingly, we can discern no genuine issue of material fact on this issue.

Since the Town had no authority to enact or enforce the APSFO or Condition 17, it likewise had no authority to require plaintiffs to continue paying the illegal fees when the APSFO was repealed. Therefore, under *Union,* we conclude that the APSFO and Condition 17 are *ultra vires*, and hold that the trial court did not err in declaring that they are "invalid, unenforceable, void and of no legal effect." This assignment of error is overruled.

### IV. Statute of Limitations

### A. Two-Month Statute of Limitations

[3] The Town of Cary argues that plaintiffs' claims are barred by the two-month statute of limitations contained in N.C. Gen. Stat. § 160A-364.1 (2009). We do not agree.

Section 160A-364.1 provides:

> A cause of action as to the validity of any *zoning* ordinance, or amendment thereto, adopted under this Article or other applicable law shall accrue upon adoption of the ordinance, or amendment thereto, and shall be brought within two months as provided in G.S. 1-54.1.

N.C.G.S. § 160A-364.1 (emphasis added); *see* N.C. Gen. Stat. § 1-54.1 (2009) ("Within two months an action contesting the validity of any zoning ordinance or amendment thereto adopted by a county under Part 3 of Article 18 of Chapter 153A of the General Statutes or other applicable law or adopted by a city under Chapter 160A of the General Statutes or other applicable law."). Where these statutes are applicable, this Court has strictly applied the two-month statute of limitations to bar causes of action challenging an ordinance. *See, e.g., Potter v. City of Hamlet*, 141 N.C. App. 714, 719, 541 S.E.2d 233, 236 (2001).

In this case, we hold that the two-month statute of limitations in N.C.G.S. § 160A-364.1 does not apply, because the APSFO is a subdivision ordinance rather than a zoning ordinance. Section 3.18.2(A) of the APSFO provides that "no *subdivision* plan or site plan may be approved unless on the date of such approval there exists a valid and current Certificate of Adequate Educational Facilities (CAEF) applicable to the project for which such approval is sought." (Emphasis added.) Moreover, in addition to the APSFO's plain language, the term "subdivision" under Chapter 160A of our General Statutes is defined as:

> [A]ll divisions of a tract or parcel of land into two or more lots, building sites, or other divisions when any one or more of those divisions is created for the purpose of sale or building development (whether immediate or future) and shall include all divisions of land involving the dedication of a new street or a change in existing streets[.]

N.C. Gen. Stat. § 160A-376(a) (2009). The accepted proposal by Cameron Pond satisfies this definition.

In *Coventry Woods Neighborhood Ass'n, Inc. v. City of Charlotte*, this Court recently restated the reasoning behind the exclusion of subdivision ordinances from the two-month statute of limitations in section 160A-364.1. 202 N.C. App. 247, 688 S.E.2d 538, *appeal dismissed*, 364 N.C. 128, 695 S.E.2d 757 (2010). "The regulation of sub-

divisions and zoning are addressed in separate provisions of Chapter 160A of the General Statutes. As a result, the limitations period relating to challenges to 'zoning ordinances' set out in [N.C.G.S. §§ 1-54.1 and 160A-364.1] simply does not apply to challenges to the constitutionality of subdivision ordinance provisions[.]" *Id.* at 254, 688 S.E.2d at 543 (citation omitted); *see also Meares v. Town of Beaufort*, 193 N.C. App. 96, 104, 667 S.E.2d 239, 244 (2008) (" 'Although this Court has recognized that the legal principles involved in review of zoning applications are similar and relevant to review of the denial of subdivision applications, we have also stated that zoning statutes do not limit how a subdivision applicant may seek judicial review.' ") (quoting *Hemphill-Nolan v. Town of Weddington*, 153 N.C. App. 144, 147, 568 S.E.2d 887, 889 (2002) (citation and quotations omitted)). Thus, since the APSFO at issue here is a "subdivision" ordinance, section 160A-364.1 is not the applicable statute of limitations to plaintiffs' causes of action.

This conclusion does not, however, end our analysis. As a general rule, the burden is on a defendant to plead and prove an affirmative defense under Rule 8 of the North Carolina Rules of Civil Procedure. N.C.R. Civ. P. 8(c) (2010). However, in North Carolina, once the defense of statute of limitations is raised, the burden is on the plaintiff to show that their claim is not time-barred. *Georgia-Pacific Corp. v. Bondurant*, 81 N.C. App. 362, 363-64, 344 S.E.2d 302, 304 (1986) ("North Carolina, apparently alone among American jurisdictions, continues to adhere to the rule that once the statute of limitations has been properly pleaded in defense the burden of proof shifts to the plaintiff to show that the action was filed within the statutory period."). A defendant's failure to raise the precise General Statute prescribing the time period for the statute of limitations does not alleviate a plaintiff's burden on this issue. *See Bonestell v. North Topsail Shores Condominiums*, 103 N.C. App. 219, 223, 405 S.E.2d 222, 225 (1991) ("Nationwide's failure to plead N.C.G.S. § 1-52(16) by precise number and subsection is not fatal under N.C.G.S. § 1A-1, Rule 8(c).").

In light of the above principles, we turn to plaintiffs' claim that all their claims are governed by the ten-year statute of limitations contained in N.C. Gen. Stat. § 1-56 (2009).

### B. Claims under 42 U.S.C. § 1983

In *Faulkenbury v. Teachers' and State Employees' Retirement System of North Carolina*, this Court noted that the three-year

statute of limitations for personal injuries in N.C. Gen. Stat. § 1-52 applies to actions brought under section 1983. 108 N.C. App. 357, 367, 424 S.E.2d 420, 424-25 (citing *Wilson v. Garcia*, 471 U.S. 261, 85 L. Ed. 2d 254 (1985)), *aff'd*, 335 N.C. 158, 436 S.E.2d 821 (1993). However, even though the limitations period is prescribed by state law, the question of "when a § 1983 cause of action accrues is a question of federal law." *Housecalls Home Health Care, Inc. v. State Dept. of Health and Human Services*, 200 N.C. App. 66, 72, 682 S.E.2d 741, 745 (2009), *disc. review denied and appeal dismissed*, 363 N.C. 802, 690 S.E.2d 698 (2010). A cause of action accrues under federal law " 'when [a] plaintiff knows or has reason to know of the injury which is the basis of the action.' " *Id.* (quoting *Nat'l Adver. Co. v. Raleigh*, 947 F.2d 1158, 1162 (4th Cir. 1991)).

Plaintiffs have pled that they have paid the fees pursuant to Condition 17 "under protest." Thus, it appears each plaintiffs' cause of action accrued the first time an application was made for a building permit and the fee was paid to the Town under Condition 17.[3] The exact time of accrual is different for each individual plaintiff under this standard; however, the record shows that all of plaintiffs' claims accrued sometime between 3 May 2005 and 27 September 2007, the time period from the time the first payment was made by any of the plaintiffs and the filing of the complaint. The first payments were made on 3 May 2005 by Bluepoint Homes and Impact Design-Build, Inc. Bluepoint paid the Town $4,000 and Impact paid $3,000.

The Town contends that plaintiffs' causes of action accrued at the time the APSFO was adopted or when Cameron Pond was approved in May 2003. Even assuming *arguendo* that either of these dates are the date of accrual, plaintiffs' suit is not barred, because plaintiffs also argue that the Town's acceptance of the fees pursuant to Condition 17 was a continuing violation. The "continuing wrong doctrine" is "an exception to the general rule that a claim accrues when the right to maintain a suit arises." *Babb v. Graham*, 190 N.C. App. 463, 481, 660 S.E.2d 626, 637 (2008), *disc. review denied*, 363 N.C. 257, 676 S.E.2d 900 (2009). "When this doctrine applies, a statute of limitations does not begin to run until the violative act ceases." *Williams v. Blue Cross Blue Shield of N.C.*, 357 N.C. 170, 179, 581 S.E.2d 415, 423 (2003). " 'A continuing violation is occasioned by continual unlawful acts, not by continual ill effects from an original vio-

---

3. We believe that this point in time would be the point of accrual because Condition 17 was not part of the chain of title. The builder-plaintiffs in this case would not therefore have been on notice of the fee at the time the lots were purchased.

lation.'" *Id.* (quoting *Ward v. Caulk*, 650 F.2d 1144, 1147 (9th Cir. 1981)). In determining whether a plaintiff suffers from a continuing violation, we consider "'[t]he particular policies of the statute of limitations in question, as well as the nature of the wrongful conduct and harm alleged[.]'" *Id.* (quoting *Cooper v. United States*, 442 F.2d 908, 912 (7th Cir. 1971)). The tolling of the statute of limitations for section 1983 claims is governed by state law unless the state law is inconsistent with "either § 1983's chief goals of compensation and deterrence or its subsidiary goals of uniformity and federalism[.]" *Hardin v. Straub*, 490 U.S. 536, 539, 104 L. Ed. 2d 582, 588-89 (1989) (footnote omitted).

We hold that the acceptance of each fee under Condition 17 was a continuing wrong by the Town, because the violation was the result of "continual unlawful acts" rather than merely the "continual ill effects from an original violation." *Ward*, 650 F.2d at 1147. Each time a builder-plaintiff applied for a permit and paid the fee to the Town, the Town perpetuated its "custom" or "usage" under "color of . . . ordinance" to unlawfully deprive the builders of their money. 42 U.S.C. § 1983. In North Carolina, we have long held that the payment of such illegal fees tolls the running of the statute of limitations, and that a plaintiff is entitled to recover all fees within the limitations period from the time their cause of action is initiated. *Cf. Faulkenbury v. Teachers' and State Employees' Ret. Sys.*, 345 N.C. 683, 695, 483 S.E.2d 422, 429 (1997) ("We believe that the reductions in payments under the new systems were deficiencies which have continued to the present time."); *Haanebrink v. Meyer*, 47 N.C. App. 646, 648, 267 S.E.2d 598, 599 (1980) ("The right of action to recover the penalty for usury paid accrues upon each payment of usurious interest giving rise to a separate cause of action to recover the penalty therefor, which action is barred by the statute of limitations at the expiration of two years from such payment."). This rule applies so long as the illegality was not complete at the time the transaction took place between the parties. *See, e.g., Shepard v. Ocwen Federal Bank, FSB*, 172 N.C. App. 475, 617 S.E.2d 61 (2005), *aff'd*, 361 N.C. 137, 638 S.E.2d 197 (2006).

Here, similar to our Supreme Court's holding in *Faulkenbury*, the acceptance of the illegal fees by the Town was a continuing violation, and plaintiffs are entitled to seek the recovery of the fees dating back to 27 September 2004, three years from the filing of their complaint, pursuant to their 42 U.S.C. § 1983 causes of action. *See Marzec v. Nye*, 203 N.C. App. 88, 94, 690 S.E.2d 537, 542 (2010); *South Shell Investment v. Town of Wrightsville Beach*, 703 F. Supp. 1192, 1195

(E.D.N.C. 1988) ("[T]he pretrial order . . . shows that all of the impact and tap fees paid by . . . plaintiffs were paid within three years of the motion to amend except for the payment of one tap fee of $2,250.00[.] . . . Plaintiffs' claim for that payment, therefore, is barred by the statute of limitations."), aff'd, 900 F.2d 255 (4th Cir. 1990). Since the first impact fees were paid in May 2005, plaintiffs are entitled to recover all the fees they have paid by application of the continuing wrong doctrine in addition to the standard operation of the statute of limitations.

### C. Article I, section 19 Claims

The trial court awarded plaintiffs' recovery of the fees paid under Condition 17 under both the North Carolina Constitution and 42 U.S.C. § 1983. Article I, section 19 of the North Carolina Constitution "is self-executing, and neither requires any law for its enforcement, nor is susceptible of impairment by legislation." Sale v. Highway Commission, 242 N.C. 612, 617, 89 S.E.2d 290, 295 (1955). A direct cause of action to enforce the rights contained in Article I of the North Carolina Constitution is permitted in circumstances where there is an " 'absence of an adequate state remedy.' " Davis v. Town of Southern Pines, 116 N.C. App. 663, 675, 449 S.E.2d 240, 247 (1994) (citation omitted); see, e.g., Glenn-Robinson v. Acker, 140 N.C. App. 606, 632, 538 S.E.2d 601, 620 (2000) ("As we have reversed the trial court's grant of summary judgment on plaintiff's state tort law claims against Acker, there is an adequate state remedy for plaintiff's alleged injury resulting from Acker's conduct."). In examining whether a state constitutional claim can proceed under the "adequate state remedy" standard, our Supreme Court has given the North Carolina "Constitution a liberal interpretation in favor of its citizens with respect to those provisions which were designed to safeguard the liberty and security of the citizens in regard to both person and property." Corum v. University of North Carolina, 330 N.C. 761, 783, 413 S.E.2d 276, 290 (1992); Craig v. New Hanover Cty. Bd. of Educ., 363 N.C. 334, 338, 678 S.E.2d 351, 354 (2009) (" '[I]n the absence of an adequate state remedy, one whose state constitutional rights have been abridged has a direct claim against the State under our Constitution.' ") (quoting Corum, 330 N.C. at 782, 413 S.E.2d at 289).

Causes of action brought pursuant to the North Carolina Constitution, however, are not without limits, and may be subject to dismissal if untimely. See Mahaffey v. Forsyth County, 99 N.C. App. 676,

394 S.E.2d 203 (1990) (state constitutional challenge to zoning ordinance held barred by statute of limitations contained in N.C.G.S. § 1-54.1), *aff'd*, 328 N.C. 323, 401 S.E.2d 365 (1991); *Midgett v. Highway Commission*, 260 N.C. 241, 132 S.E.2d 599 (1963) (takings claim against North Carolina Department of Transportation barred by statute of limitations), *overruled on other grounds, Lea Co. v. North Carolina Bd. of Transp.*, 308 N.C. 603, 304 S.E.2d 164 (1983). In determining the limitations period for claims under the North Carolina Constitution, we must examine a plaintiff's cause of action and apply the statute of limitations encompassing the claim at issue. *See Pinehurst Area Realty, Inc. v. Village of Pinehurst*, 100 N.C. App. 77, 394 S.E.2d 251 (1990) (state and federal constitutional claims barred by former nine-month statute of limitations applying to zoning ordinance challenges); *Staley v. Lingerfelt*, 134 N.C. App. 294, 297, 517 S.E.2d 392, 395 (1999) (three-year statute of limitations applies to state constitutional claims involving personal injury).

Here, we conclude that plaintiffs have no adequate state remedy available in these circumstances, and therefore their state constitutional claims are appropriate. After reviewing the entirety of Chapter I, article 5 of our General Statutes, N.C. Gen. Stat. § 1-46 through -55 (2009), we can ascertain no specific shorter limitations period applying to the type of declaratory claims brought by plaintiffs in this case. Plaintiffs' claims involve the Town's custom, usage, and practice of accepting fees through an abandoned and unlawful mechanism grandfathered by a subdivision plan. Our General Statutes do not delineate a shortened time frame for such causes of action. Accordingly, we hold that the ten-year statute of limitations in N.C.G.S. § 1-56 applies, and plaintiffs are entitled to recoup all of the fees that they have sought in their complaint pursuant to their claims under Article I, section 19 of the North Carolina Constitution.

Plaintiffs have carried their burden of showing that their claims are not barred, and the Town has failed to adduce any facts showing an issue for trial. Therefore, summary judgment on this issue was proper. The Town's assignment of error is overruled.

## V. Estoppel

**[4]** The Town of Cary argues that all of plaintiffs' claims are barred by the doctrine of estoppel. The Town contends that since plaintiffs and their predecessor-in-interest accepted the benefits of their subdivision approval with Condition 17, they are now precluded from challenging it. We disagree.

"The acceptance of benefits under a statute generally precludes an attack upon it."[4] *Convent v. Winston-Salem*, 243 N.C. 316, 324, 90 S.E.2d 879, 884 (1956) [*Covenant*]. Under the doctrine of estoppel, a plaintiff "cannot claim the benefit of statutes and afterwards assail their validity. There is no sanctity in such a claim of constitutional right as prevents it being waived as any other claim of right may be." *Id.*

> "Estoppel to question the constitutionality of laws applies not only to acts of the Legislature, but to ordinances and proceedings of municipal corporations, and may be extended to cases where proceedings of a municipal corporation are questioned on the ground of the unconstitutionality of the statute under which they are had, as well as to cases where they are attacked on other grounds."

> . . . "Estoppel is most frequently applied in cases involving constitutional law where persons, in some manner, partake of advantages under statutes. The rule is well settled that one who voluntarily proceeds under a statute and claims benefits thereby conferred will not be heard to question its constitutionality in order to avoid its burdens. Certainly such a person will not be allowed to retain his advantage or keep his consideration and then repudiate the act as unconstitutional. This principle applies also to questioning the rules or actions of state commissions."

*Id.* at 324, 90 S.E.2d at 884-85 (citation omitted). In *Covenant*, this State's Supreme Court held that the acceptance of benefits pursuant

---

4. There seems to be an inherent tension with this proposition and the holding of *Power Mfg. Co. v. Saunders*, 274 U.S. 490, 71 L. Ed. 1165 (1927). In *Saunders*, a foreign corporation was not estopped from challenging the constitutionality of a statute controlling venue for foreign corporations, even though the corporation accepted the benefit of doing business within the forum state. *Saunders*, 274 U.S. at 496-97, 71 L. Ed. at 1169. In finding that the foreign corporation's challenge was not estopped, the United States Supreme Court stated:

> The contention advanced by counsel for the plaintiff that the defendant impliedly assented to the venue provisions is answered and refuted by repeated decisions holding that a foreign corporation by seeking and obtaining permission to do business in a State does not thereby become obligated to comply with or estopped from objecting to any provision in the state statutes which is in conflict with the Constitution of the United States. . . . [T]he case of *W. W. Cargill Co. v. Minnesota*, 180 U.S. 452, 468, [45 L. Ed. 619] . . . held that 'the acceptance of a license, in whatever form, will not impose upon the licensee an obligation to respect or to comply with any provisions of the statute . . . that are repugnant to the Constitution of the United States.' "

*Id.* (citations omitted). For the reasons below, however, we do not reach this issue in this case.

to an ordinance by a prior owner in a property's chain of title may estop a challenge by a successor-in-interest, where the successor-in-interest also participated in the benefit and had knowledge of the benefit prior to taking ownership. *Id.* at 326, 90 S.E.2d at 885-86 ("[T]he Sisters took title to the property with full knowledge, and are estopped to challenge the validity of the ordinance under which they are permitted to conduct a private school.").

This Court applied these principles in *Goforth Properties, Inc. v. Town of Chapel Hill*, 71 N.C. App. 771, 323 S.E.2d 427 (1984). In *Goforth*, the plaintiffs sought recovery of fees paid to the Town of Chapel Hill. *Id.* at 772, 323 S.E.2d at 429. The fees were paid pursuant to an ordinance requiring a developer to either (1) install parking spaces within 500 feet of a building being constructed in the Town's central business district or (2) pay $2,500 per space not constructed under the ordinance. *Id.* at 772, 323 S.E.2d at 428. Since the plaintiffs in *Goforth* could not construct the required parking spaces within 500 feet of the building, the plaintiffs paid $28,750 in fees in order to receive their building permit. *Id.*

The *Goforth* plaintiffs filed suit to recover the fees under claims of negligence, illegality, and unconstitutionality of the ordinance, both as written and as applied. *Id.* at 772, 323 S.E.2d at 429. The trial court granted summary judgment to the Town of Chapel Hill on all of the plaintiffs' causes of action. *Id.* On appeal, this Court upheld summary judgment under the doctrine of estoppel.

> It is undisputed in the present case that plaintiffs have in fact constructed their restaurant. Nowhere do plaintiffs challenge the Town's requirement of a certain number of off-street parking spaces for the restaurant. The Town's uncontradicted evidence shows that plaintiffs cannot physically construct the necessary number of spaces on site; nothing in the record suggests any effort by plaintiffs to provide the spaces elsewhere within the 500 foot distance. The Town's uncontradicted evidence also shows that under the terms of the ordinance plaintiffs could not have built a building of the size of the one actually constructed. Plaintiffs have never applied for a variance, and they have not offered to demolish their building, apparently the only other feasible alternative. We therefore hold that, having accepted the benefit of the payment scheme by constructing the restaurant in its present, otherwise illegal size, plaintiffs are estopped to challenge the validity of the ordinances. Summary judgment on

plaintiffs' statutory and constitutional challenges was therefore proper.

*Id.* at 773-74, 323 S.E.2d at 429. Without further discussion of the merits of plaintiffs' constitutional claims or their causes of action under the theory of illegality, this Court affirmed the trial court's order granting summary judgment to the Town of Chapel Hill.

Here, the Town contends that plaintiffs accepted the following benefits:

> 5. When Cameron Pond was rezoned to a PUD overlay district in May of 2003, the total number of potential dwelling units rose from 292 to 417.

> 6. In addition to the increased density provided by the 2003 rezoning, Cameron Pond received the following zoning benefits per various conditions that were mutually acceptable between the applicant and the Town:

> > a. all building setbacks could be reduced by a maximum of 10% by the Town without evidence of a hardship or the requirement to gain a variance from the Zoning Board of Adjustment as would normally be the case;

> > b. building setbacks as specified in the PUD document were exempt from future ordinance changes, a zoning provision which was not normally available to other properties;

> > c. buffers and streetscapes as specified in the PUD were exempt from future code changes, a zoning provision which was not normally available to other properties;

> > d. the developer retained the option to implement alternate street designs from Town of Cary standards, a zoning provision which was not normally available to other properties; and

> > e. where buffers and topography created barriers to street crossings, the developer obtained a waiver from the street connectivity requirements in Cary's [Unified Development Ordinance].

A close examination of these benefits demonstrates how plaintiffs, unlike the plaintiffs in *Goforth* and *Covenant*, have not received any benefit under the APSFO or Condition 17. The primary benefit of the Cameron Pond subdivision proposal was an increase in the num-

ber of building lots on the 143 acres comprising the subdivision. After Cameron Pond was approved, the developer reaped this benefit to sell 125 additional lots. The secondary benefits outlined above involving setback standards, streetscapes, street design, and design barriers allowed the developer of Cameron Pond to arrange these additional lots with minimal interference from the Town during construction. While the developer of Cameron Pond reaped these numerous benefits, builder-plaintiffs were burdened only with the detriment of paying the fees under Condition 17.

The Town of Cary fails to demonstrate how plaintiffs have received any benefit at all. There is no allegation that any of plaintiffs were able to build more homes through Condition 17 or that the zoning variances somehow benefitted plaintiffs through the building process. In *Covenant*, the Sisters fully benefitted under the ordinance accepted by the predecessor-in-interest by being able to run their school. *Covenant*, 243 N.C. at 316, 90 S.E.2d at 885-86. No such similar benefit is present in this case. The record instead shows that the developer of Cameron Pond agreed to Condition 17 despite their feeling that the condition was unlawful, and then passed the burden of Condition 17 to plaintiffs, who had to actually pay the fees when applying for building permits. Since the Town has failed to show that plaintiffs have received any benefit under the APSFO or Condition 17, even though plaintiffs have been forced to participate in the Town's illegal custom and practice of imposing and accepting the fees, plaintiffs are not estopped from pursuing their claims. This assignment of error is overruled.

## VI. Due Process

[5] The Town of Cary argues that it did not violate plaintiffs' substantive due process rights. We disagree.

"In general, substantive due process protects the public from government action that [1] unreasonably deprives them of [2] a liberty or property interest." *Toomer v. Garrett*, 155 N.C. App. 462, 469, 574 S.E.2d 76, 84 (2002). " 'Substantive due process denotes a standard of reasonableness and limits a state's exercise of its police power[.]' " *Beneficial North Carolina v. State ex rel. Banking Comm.*, 126 N.C. App. 117, 127, 484 S.E.2d 808, 814 (1997) (citation omitted). "The traditional substantive due process test has been that a statute must have a rational relation to a valid state objective." *Id.* (citations and quotation marks omitted). " 'Substantive due process' protection prevents the government from engaging in conduct that 'shocks the con-

science,' or interferes with rights 'implicit in the concept of ordered liberty.' " *State v. Thompson*, 349 N.C. 483, 491, 508 S.E.2d 277, 282 (1998) (citations omitted). "Substantive due process is a guaranty against arbitrary legislation, demanding that the law shall not be unreasonable, arbitrary or capricious, and that the law be substantially related to the valid object sought to be obtained." *State v. Joyner*, 286 N.C. 366, 371, 211 S.E.2d 320, 323 (1975). "Our courts have long held that '[t]he "law of the land" clause has the same meaning as "due process of law" under the Federal Constitution.' " *State v. Guice*, 141 N.C. App. 177, 186, 541 S.E.2d 474, 480 (2000) (citation omitted).

Applying these principles to this case, plaintiffs were required to make two showings in their substantive due process claim: (1) demonstrate a fundamental property interest protected by the Fourteenth Amendment or the North Carolina Constitution; and (2) prove that they were deprived of this property interest by government action that either "shocks the conscience" or has no "rational relation to a valid state objective." There is no genuine issue of material fact regarding the first element, because plaintiffs had a property interest in the fees that they paid to the Town of Cary. *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 766, 162 L. Ed. 2d 658, 675 (2005). There is also no genuine issue of material fact as to the second element, because the Town of Cary had no authority under its own APSFO to charge the fees at the time the Cameron Pond proposal was accepted, and the Town had no statutory authority to enact the APSFO. As a result, the fees paid by plaintiffs pursuant to Condition 17 and the APSFO had no relation to a "valid" state objective.

Given that plaintiffs satisfied their burden of proof, the trial court correctly concluded that plaintiffs were entitled to judgment as a matter of law on their substantive due process claims under the United States and North Carolina Constitutions in the absence of a triable issue presented by the Town of Cary. This assignment of error is overruled.

### VII. Equal Protection

[6] The Town of Cary argues that it did not violate plaintiffs' equal protection rights. We disagree.

> "The Equal Protection Clause of the Fourteenth Amendment provides that 'no State shall . . . deny to any person within its jurisdiction the equal protection of the laws.' U.S. Const. amend. XIV, § 1. The equal protection requirement 'does not take from

the States all power of classification,' but 'keeps governmental decision-makers from treating differently persons who are in all relevant respects alike.' To succeed on an equal protection claim, [plaintiff] 'must first demonstrate that [it] has been treated differently from others with whom [it] is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination.' If [it] makes this showing, 'the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny.' To state an equal protection claim, [plaintiff] must plead sufficient facts to satisfy each requirement[.]"

*Good Hope Hosp., Inc. v. N.C. Dep't of Health & Human Servs.*, 174 N.C. App. 266, 274, 620 S.E.2d 873, 880-81 (2005) (quoting *Veney v. Wyche*, 293 F.3d 726, 730-31 (4th Cir. 2002)).

Plaintiffs do not assert that a higher scrutiny is applicable here, and we accordingly apply a rational basis standard. Here, there is no genuine issue of material fact that (1) plaintiffs were intentionally treated unequally by the Town compared to similarly situated entities, and (2) there is no rational basis for the Town's disparate treatment. Plaintiffs paid higher fees than several of their counterparts, and when the APSFO was repealed, plaintiffs were singled out to continue paying fees even though future subdivision lot owners would not have to pay the fees. By the language of Condition 17, the Town purposely imposed the fees to satisfy its ordinance, which we have already concluded to be beyond the Town's statutory authority. Given that these facts are not in dispute and the Town has otherwise failed to demonstrate a triable issue, the trial court was correct in granting plaintiffs summary judgment. This assignment of error is overruled.

## VIII. Attorneys' Fees

[7] The Town of Cary finally argues that the imposition of attorneys' fees pursuant to 42 U.S.C. § 1988(b) was improper, because the trial court erred in concluding that the Town of Cary violated plaintiffs' substantive due process and equal protection rights. We disagree.

Section 1988(b) provides that "[i]n any action or proceeding to enforce a provision of [section 1983,] . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs[.]" 42 U.S.C. § 1988(b). Because the award of attorneys' fees under section 1988 is discre-

tionary, we review such awards for an abuse of discretion. *Shaw v. Jones*, 81 N.C. App. 486, 489-90, 344 S.E.2d 321, 324 (1986).

We have already concluded that the trial court did not err in concluding that plaintiffs' constitutional rights were violated by the Town. Since the Town offers no other argument as to how the trial court abused its discretion in awarding the fees, we hold that the award was properly granted under section 1988. This assignment of error is overruled.

## CONCLUSION

Based on the foregoing, the orders of the trial court are

Affirmed.

Chief Judge MARTIN concurs.

Judge JACKSON dissents with separate opinion.

JACKSON, Judge, dissenting.

Although I agree with the reasoning in the majority opinion, because I believe this appeal is interlocutory, I would vote to dismiss.

As the majority notes, in most circumstances, an interlocutory order is not immediately appealable. *Goldston v. American Motors Corp.*, 326 N.C. 723, 725, 392 S.E.2d 735, 736 (1990). However, our legislature has created two exceptions to this general rule: (1) pursuant to Rule 54(b), "if the order is final as to some but not all of the claims or parties and the trial court certifies there is no just reason to delay the appeal" and (2) " 'if the trial court's decision deprives the appellant of a substantial right which would be lost absent immediate review.' " *Bartlett v. Jacobs*, 124 N.C. App. 521, 524, 477 S.E.2d 693, 695 (1996) (quoting *N.C. Dep't of Transp. v. Page*, 119 N.C. App. 730, 734, 460 S.E.2d 332, 334 (1995)).

Although 54(b) provides the trial court with the authority to certify a case for immediate appeal, this Court has emphasized that the trial court's certification of an appeal pursuant to Rule 54(b) does not deprive this Court of its role in determining whether the appeal is properly before us or not. As this Court has explained, "the trial court's determination that there is no just reason to delay the appeal, while accorded great deference, cannot bind the appellate courts because ruling on the interlocutory nature of appeals is properly a

matter for the appellate division, not the trial court." *First Atl. Mgmt., Corp. v. Dunlea Realty, Co.*, 131 N.C. App. 242, 247, 507 S.E.2d 56, 60 (1998) (citations and quotation marks omitted). *See, e.g., Cagle v. Teachy*, 111 N.C. App. 244, 247, 431 S.E.2d 801, 803 (1993) ("[A] trial court cannot by denominating its decision a 'final judgment' confer appeal status under Rule 54(b) if its ruling is not indeed such a judgment." (citation omitted)). Therefore, it is incumbent upon the parties also to articulate how they will be deprived of a substantial right in the absence of immediate review when the matter is not before us as the result of a final judgment. *See First Atl. Mgmt., Corp.*, 131 N.C. App. at 247, 507 S.E.2d at 60.

Here, the Town of Cary has done no more than make the bare assertion that this matter has been "certified by the trial court for review in this Court pursuant to N.C.R. Civ. P. 54(b)" and accordingly, jurisdiction is proper. Without more, I must vote to dismiss, although I agree with the reasoning set forth in the majority opinion.