IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-1048

Filed 16 July 2024

Orange County, No. 21 CVS 726

EPCON HOMESTEAD, LLC, Plaintiff,

v.

TOWN OF CHAPEL HILL, Defendant.

Appeal by Plaintiff from order entered 25 July 2023 by Judge R. Allen Baddour Jr. in Orange County Superior Court. Heard in the Court of Appeals 1 May 2024.

*Morningstar Law Group, by Jeffrey L. Roether & William J. Brian, Jr., for Plaintiff-Appellant.*

*Hartzog Law Group, by Dan M. Hartzog, Jr., Katherine Barber-Jones & Rachel G. Posey, for Defendant-Appellee.*

CARPENTER, Judge.

Epcon Homestead, LLC ("Plaintiff") appeals from the trial court's order granting the Town of Chapel Hill's (the "Town's") motion to dismiss. On appeal, Plaintiff argues the trial court incorrectly concluded that Plaintiff's complaint was time barred. After careful review, we disagree with Plaintiff. Accordingly, we affirm the trial court's order.

**I. Factual & Procedural Background**

This case involves real property, zoning, and statutes of limitation.[1] On 24 October 2019, Plaintiff, a homebuilder, sued the Town. The Town removed the case to the United States District Court for the Middle District of North Carolina. After concluding that Plaintiff's federal causes of action were time barred, the Middle District declined to exercise jurisdiction over Plaintiff's case. On 26 May 2021, the Middle District dismissed Plaintiff's complaint without prejudice, allowing Plaintiff to refile in state court. On 20 March 2023, the United States Court of Appeals for the Fourth Circuit affirmed.

Plaintiff refiled its complaint in Orange County Superior Court, and the Town moved to dismiss under Rule 12(b)(6). Again, the Town argued that Plaintiff's complaint was time barred. Plaintiff's complaint and its attachments show the following.

The disputed real property (the "Property") is an eighteen-acre piece of land located in Chapel Hill, North Carolina. Plaintiff began purchasing the Property piecemeal in 2015. As required by section 3.10 of the Town's Land Use Management Ordinance ("LUMO"), Plaintiff applied for a special use permit (the "SUP") from the Town in order to develop the Property into sixty-three residential units. On 27 October 2014, before Plaintiff began purchasing the Property, the Town approved the

---

[1] "Although the singular phrase is *statute of limitations*, the plural tends to be *statutes of limitation*—that is, the *-s* gets dropped from *limitations*." BRYAN A. GARNER, GARNER'S DICTIONARY OF LEGAL USAGE 843 (3d ed. 2011).

SUP.

The Town adopted section 3.10 of LUMO "to create and preserve affordable housing opportunities" and "to provide a structure for cooperative participation by the public and private sectors in the production of affordable housing." Chapel Hill, N.C., Land Use Management Ordinance § 3.10 (2003). Section 3.10 applies to development projects that construct five or more single-family residential units within the Town's jurisdiction. *Id.* § 3.10.1(a). Section 3.10 requires developers to dedicate fifteen percent of their proposed construction to "affordable housing" units. *Id.* § 3.10.2(a). As an alternative to the affordable-housing allocation, however, developers may pay an approved fee. *Id.* § 3.10.3(d)(4).

Rather than dedicating fifteen percent of the Property to "affordable housing," Plaintiff offered to pay a $803,250 fee (the "Fee") to the Town. Through the SUP, the Town approved the Fee. Plaintiff decided to pay the Fee periodically. Plaintiff made its first Fee payment on 5 July 2017 and its final Fee payment on 20 March 2019.

Plaintiff's complaint lists several causes of action. In its first cause of action, Plaintiff requests a declaration that the Fee is ultra vires and therefore unlawful. In its second and third causes of action, Plaintiff requests a declaration that the Fee is unconstitutional. In its fourth cause of action, Plaintiff seeks a refund of the Fee, alleging that it is statutorily entitled to a return of Fee payments because the Fee is unlawful. In its fifth cause of action, Plaintiff seeks a refund of the Fee, alleging a common-law entitlement to a return of Fee payments because the Fee is unlawful. In

its sixth cause of action, to the extent there is no other remedy, Plaintiff requests damages through a *Corum* action.[2]  In its final cause of action, Plaintiff requests attorneys' fees.

On 25 July 2023, the trial court concluded that Plaintiff's complaint was time barred and granted the Town's motion to dismiss.  On 17 August 2023, Plaintiff timely filed notice of appeal.

## II.  Jurisdiction

This Court has jurisdiction under N.C. Gen. Stat. § 7A-27(b)(1) (2023).

## III.  Issue

The issue on appeal is whether the trial court erred by dismissing Plaintiff's complaint.

## IV.  Analysis

### A.  Standard of Review

We review the grant of a motion to dismiss under Rule 12(b)(6) de novo. *Bridges v. Parrish*, 366 N.C. 539, 541, 742 S.E.2d 794, 796 (2013).  Under a de novo review, this Court "'considers the matter anew and freely substitutes its own judgment' for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632–33, 669 S.E.2d 290, 294 (2008) (quoting *In re Greens of Pine Glen Ltd. P'ship*, 356 N.C.

---

[2] "A *Corum* claim allows a plaintiff to recover compensation for a violation of a state constitutional right for which there is either no common law or statutory remedy, or when the common law or statutory remedy that would be available is inaccessible to the plaintiff." *Taylor v. Wake Cty.*, 258 N.C. App. 178, 183, 811 S.E.2d 648, 652 (2018).

642, 647, 576 S.E.2d 316, 319 (2003)).

A trial court must dismiss a complaint if it fails to "state a claim upon which relief can be granted." N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) (2023). "Dismissal is proper 'when one of the following three conditions is satisfied: (1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim.'" *Burgin v. Owen*, 181 N.C. App. 511, 512, 640 S.E.2d 427, 428–29 (2007) (quoting *Wood v. Guilford Cty.*, 355 N.C. 161, 166, 558 S.E.2d 490, 494 (2002)). At the 12(b)(6) stage, we must treat the plaintiff's allegations as true and read the complaint liberally in the plaintiff's favor. *Lynn v. Overlook Dev.*, 328 N.C. 689, 692, 403 S.E.2d 469, 471 (1991).

## B. Statutes of Limitation

Here, the trial court dismissed Plaintiff's complaint under Rule 12(b)(6) because Plaintiff filed its complaint outside of the applicable statute of limitations. Statutes of limitation "bar claims filed outside their temporal boundaries regardless of whether the claims have merit." *Morris v. Rodeberg*, 385 N.C. 405, 409, 895 S.E.2d 328, 331 (2023). Statutes of limitation "represent the legislature's determination of the point at which the right of a party to pursue a claim must yield to competing interests, such as the unfairness of requiring the opposing party to defend against stale allegations." *Id.* at 409, 895 S.E.2d at 331 (citing *Ord. of R.R. Telegraphers v. Ry. Express Agency, Inc.*, 321 U.S. 342, 348–49, 64 S. Ct. 582, 586, 88 L. Ed. 788, 792–

93 (1944)).

### 1. When North Carolina Statutes of Limitation Begin to Run

A statute of limitations begins to run on the "accrual date." *See id.* at 409, 895 S.E.2d at 331. The accrual date is the date when the injured party can sue. *Raftery v. Wm. C. Vick Constr. Co.*, 291 N.C. 180, 183, 230 S.E.2d 405, 407 (1976). A party can sue when it sustains an injury to a "legally protected interest." *See Arendas v. N.C. High Sch. Athletic Ass'n*, 217 N.C. App. 172, 174, 718 S.E.2d 198, 199 (2011).

But we have competing language concerning *what* accrues: The North Carolina Supreme Court has said that a statute of limitations begins to run when a *cause of action* accrues, and it has said a statute of limitations begins to run when a *claim* accrues. *Compare Raftery*, 291 N.C. at 183–84, 230 S.E.2d at 407 (stating that a statute of limitations begins to run when a "cause of action" accrues) *with Morris,* 385 N.C. at 409, 895 S.E.2d at 331 (stating that a statute of limitations begins to run when a "claim" accrues).

Although seemingly synonymous, claims and causes of action are distinct. A cause of action is a legal theory; a claim is not. *See Bockweg v. Anderson*, 333 N.C. 486, 494, 428 S.E.2d 157, 162–63 (1993). A claim may support a cause of action. Indeed, a claim may support multiple causes of action. But a cause of action, a legal theory, is not a claim: A cause of action "is the vehicle for pursuing a claim." *St. Augustine School v. Underly*, 78 F.4th 349, 352 (7th Cir. 2023). Recently, the United States Court of Appeals for the Seventh Circuit precisely explained the difference

between a claim and a cause of action:

> [There is a] distinction between a legal claim and a theory supporting relief (what the common law used to call a cause of action). A claim is the set of operative facts that produce an assertable right in court and create an entitlement to a remedy. A theory of relief is the vehicle for pursuing the claim; it may be based on any type of legal source, whether a constitution, statute, precedent, or administrative law. The specific theory dictates what the plaintiff needs to prove to prevail on a claim and what relief may be available. One lawsuit may raise multiple claims, and each claim may be supported by multiple theories.

*Id.* In other words, a claim is a pattern of allegations that may, or may not, support a cause of action. *See id.*

Our res judicata caselaw illustrates the distinction between a claim and a cause of action. We often refer to res judicata as "claim preclusion." *See Whitacre P'ship v. Biosignia, Inc.*, 358 N.C. 1, 15, 591 S.E.2d 870, 880 (2004). Res judicata prevents relitigation of a claim. *Id.* at 15, 591 S.E.2d at 880 (citing *Thomas M. McInnis & Assocs., Inc. v. Hall,* 318 N.C. 421, 428, 349 S.E.2d 552, 556 (1986)). When a party asserts a previously adjudicated claim in a later lawsuit, it is "clear that subsequent actions which attempt to proceed by asserting a new legal theory or by seeking a different remedy are prohibited under the principles of *res judicata.*" *Bockweg*, 333 N.C. at 494, 428 S.E.2d at 163.

This case provides a good example of how res judicata works. Plaintiff's complaint asserts seven legal theories. Plaintiff could not get a judgment concerning one theory, then file a subsequent complaint pursuing its other theories. *See id.* at

494, 428 S.E.2d at 163. That is because all of Plaintiff's theories are supported by one claim: Plaintiff was injured by an application of section 3.10, and section 3.10 is unlawful.

True, Plaintiff's causes of action are based on different legal authorities. Plaintiff's first, fourth, and seventh causes of action are based on statutory authority; Plaintiff's second, third, and sixth causes of action are based on constitutional authority; and Plaintiff's fifth cause of action is based on common-law authority. It is also true that Plaintiff's different theories could provide different remedies. Some could provide monetary relief; some could provide injunctive or declaratory relief. But compounding multiple theories and potential remedies does not create multiple claims. *See St. Augustine School*, 78 F.4th at 352.

The distinction between a claim and a cause of action may seem trivial. Often it will be, as a claim and its corresponding causes of action will typically accrue at the same time: A claim must support a cause of action in order to provide a remedy, *see id.* at 352, and the accrual date is generally the date of the alleged injury, *see Arendas*, 217 N.C. App. at 174, 718 S.E.2d at 199. So if the timing of the aggregate injury alleged in the claim aligns with the timing of the injury supporting the cause of action, the question of whether the accrual date concerns the claim or the cause of action is immaterial. But there are cases in which the portion of the injury that is necessary to support a cause of action occurred later in time than the beginning of the claim's aggregate injury.

This is such a case. Plaintiff's claim is this: Section 3.10 and its corresponding conditions are unlawful, and Plaintiff was injured because section 3.10, and the corresponding SUP and Fee, hindered Plaintiff's ability to develop the Property. On 27 October 2014, through the SUP, Plaintiff agreed to abide by section 3.10 by paying the Fee instead of building "affordable housing." We recognize, however, that on 27 October 2014 Plaintiff had yet to pay any of the Fee and could have discontinued development. Indeed, Plaintiff did not begin purchasing the Property until 2015.

The complaint is vague about when Plaintiff began purchasing the Property: "[Plaintiff] acquired the real property on which the Courtyards of Homestead Project was developed through several transactions occurring in 2015 and 2016." Because we must construe the complaint liberally in Plaintiff's favor, we will assume that Plaintiff first began purchasing the Property on 31 December 2015, the last day of 2015. *See Lynn*, 328 N.C. at 692, 403 S.E.2d at 471.

At the latest, Plaintiff was fully aware of section 3.10's requirements after the Town issued the SUP. And Plaintiff became regulated by section 3.10 when Plaintiff began purchasing the Property: The Property was controlled by the SUP, which under section 3.10, conditioned the Property's development on paying the Fee. So if section 3.10 and the Fee are unlawful, Plaintiff was injured when it began purchasing the Property. *See Arendas*, 217 N.C. App. at 174, 718 S.E.2d at 199. Therefore, Plaintiff could have brought its suit on 31 December 2015; thus its claim began to accrue on 31 December 2015, at the latest. *See Raftery*, 291 N.C. at 183, 230 S.E.2d at 407.

But the injury supporting some of Plaintiff's *causes of action* is more precise: specifically, Plaintiff's fourth and fifth causes of action. Plaintiff's fourth cause of action cites statutory authority and demands payment of the Fee; Plaintiff's fifth cause of action cites common-law authority and demands repayment of the Fee.

A successful cause of action for a return of unlawful fees requires Plaintiff to actually pay the Fee; otherwise, the Town has nothing to return. *See Amward Homes, Inc. v. Town of Cary*, 206 N.C. App. 38, 56, 698 S.E.2d 404, 417–18 (2010), *aff'd by an equally divided court*, 365 N.C. 305, 712 S.E.2d 849 (2011). In other words, Plaintiff was not sufficiently "injured" to support a cause of action for repayment until Plaintiff paid the Town. *See Arendas*, 217 N.C. App. at 174, 718 S.E.2d at 199. It follows, therefore, that a cause of action seeking repayment accrues when Plaintiff paid the Town. *See Amward Homes*, 206 N.C. App. at 56, 698 S.E.2d at 417–18 (stating that where plaintiffs paid several allegedly unlawful fees, the "cause of action accrued the first time an application was made for a building permit *and the fee was paid* to the Town" (emphasis added)).

Here, Plaintiff made its first Fee payment on 5 July 2017. So Plaintiff's fourth and fifth causes of action began to accrue on 5 July 2017. *See id.* at 56, 698 S.E.2d at 417–18. But as detailed above, Plaintiff's *claim* accrued, at the latest, on 31 December 2015. Therefore, this case creates a scenario where the claim and certain causes of action have different accrual dates. Although there is normally no harm in using "claim" and "cause of action" interchangeably, this case requires us to honor

the distinction.

Here, to apply the law precisely, we must determine exactly when applicable statutes of limitation begin to run: when the claim accrues, or when the cause of action accrues? Because our caselaw gives contradicting language on this question, and because statutes of limitation are legislative determinations, we will examine the relevant statutes to answer the question.

## 2. Statutes of Limitation Applicable to this Case

Here, Plaintiff argues that a three-year statute of limitations applies and cites subsection 1-52(2). *See* N.C. Gen. Stat. § 1-52(2) (2019) (stating that a three-year statute of limitations applies to "a liability created by statute"). The Town, however, argues that a one-year statute of limitations applies and cites subsection 160A-364.1(b). *See* N.C. Gen. Stat. § 160A-364.1(b) (2019) (stating that "an action challenging the validity of any zoning or unified development ordinance . . . under this Article or other applicable law shall be brought within one year of the accrual of the action").[3]

We start with subsection 1-52(2). Like most North Carolina statutes of limitation, subsection 1-52(2) is in Chapter 1. *See, e.g.*, N.C. Gen. Stat. §§ 1-46 to -

---

[3] "Effective 19 June 2020, the General Assembly consolidated the provisions governing planning and development regulations by local governments into a new Chapter 160D of the General Statutes." *85' & Sunny, LLC v. Currituck Cty.*, 279 N.C. App. 1, 9 n.3, 864 S.E.2d 742, 747 n.3 (2021). Because the former Chapter 160A was in effect at all times relevant to this appeal, we cite that chapter in this opinion.

55. Chapter 1 states that "[c]ivil actions can only be commenced within the periods prescribed in this Chapter, *after the cause of action has accrued*, except where in special cases a different limitation is prescribed by statute." *Id.* § 1-15(a) (emphasis added). Therefore, if subsection 1-52(2) applies, the statute of limitations begins to run when the cause of action accrues. *See id.*

Subsection 160A-364.1(b), however, is less clear:

> Except as otherwise provided in subsection (a) of this section, an action challenging the validity of any zoning or unified development ordinance or any provision thereof adopted under this Article or other applicable law shall be brought within one year of the accrual of such action. Such an action accrues when the party bringing such action first has standing to challenge the ordinance.

N.C. Gen. Stat. § 160A-364.1(b).

This statute of limitations begins to run when the "action" accrues. *Id.* We read "action" to mean cause of action because in the immediately preceding subsection, the "cause of action" is what accrues, and the General Assembly seems to have used "action" as shorthand for cause of action. *See id.* § 160A-364.1(a). We also read subsection 160A-364.1(b) against the backdrop of Chapter 1, which houses most of our statutes of limitation, and in which the General Assembly clearly stated that accrual applies to causes of action, not claims. *See* N.C. Gen. Stat. § 1-15.

Accordingly, the proposed statutes of limitation[4] begin to run when the applicable cause of action accrues. *See* N.C. Gen. Stat. §§ 1-52(2), 160A-364.1(b). This requires us to parse through each of Plaintiff's causes of action and discern accrual dates for each, rather than discerning one accrual date for the underlying claim. Although this approach could complicate certain cases, such policy considerations are for the General Assembly, not the courts. *See Loftin v. Sowers*, 65 N.C. 251, 255 (1871) ("Our duty is, to administer the law as it is, and not according to our notion as to how it ought to be."); *see also Page v. Lexington Ins. Co.*, 177 N.C. App. 246, 250–51, 628 S.E.2d 427, 430 (2006) (recognizing that, within the same case, different statutes of limitation may apply to different legal theories, and referring any proposed changes to this paradigm to the General Assembly).

To summarize: Claims and causes of action are distinct, and the statutes of limitation proposed in this case begin to run when the applicable causes of action accrue. To simplify our forthcoming analysis, we will split it into two parts. First, we will address Plaintiff's first, second, third, sixth, and seventh causes of action: These theories all require the same analysis, as none of them necessarily require a

---

[4] Our accrual conclusion is limited to the statutes of limitation found in subsections 1-52(2) and 160A-364.1(b). Statutes of limitation are legislative decisions, and we recognize that the General Assembly may have decided that other statutes of limitation begin to run when the underlying claim accrues. Although it appears that the General Assembly prefers causes of action to be the starting line for most statutes of limitation, *see* N.C. Gen. Stat. § 1-15, confirming that appearance is beyond the calling of this case.

payment to accrue. We will refer to these theories as the "Declaratory Causes."[5] Then we will separately address Plaintiff's fourth and fifth causes of action because these theories necessarily involve payment of the Fee, and as detailed above, they accrue later than the Declaratory Causes. We will refer to Plaintiff's fourth and fifth causes of action as the "Payment Causes."

Under this rubric, we will discern whether Plaintiff's causes of action are time barred. If Plaintiff's causes of action are time barred, its claim is therefore not one "upon which relief can be granted," *see* N.C. Gen. Stat. § 1A-1, Rule 12(b)(6), and the trial court did not err by dismissing Plaintiff's complaint, *see Burgin*, 181 N.C. App. at 512, 640 S.E.2d at 428–29.

**C. Declaratory Causes**

**1. Accrual Date**

As detailed above, accrual occurs when the injured party can sue, *Raftery*, 291 N.C. at 183, 230 S.E.2d at 407, and a party can sue when it sustains an injury to a "legally protected interest," *Arendas*, 217 N.C. App. at 174, 718 S.E.2d at 199.

Plaintiff's Declaratory Causes accrued on 31 December 2015, the same time as its underlying claim. At the latest, Plaintiff was fully aware of section 3.10's requirements after the Town issued the SUP. And Plaintiff became regulated by

---

[5] We recognize that Plaintiff's sixth and seventh causes of action do not technically request a "declaration." Nonetheless, for accrual purposes, these causes of action fit well with the other Declaratory Causes because they require a court to "declare" that the Fee is unlawful without necessarily requiring payment of a fee to accrue.

section 3.10 when Plaintiff began purchasing the Property: The Property was controlled by the SUP, which under section 3.10, conditioned the Property's development on paying the Fee. So if section 3.10 and the Fee are unlawful, Plaintiff was injured when it began purchasing the Property. *See id.* at 174, 718 S.E.2d at 199. Therefore, on 31 December 2015, Plaintiff was "at liberty to sue" and have a court render a declaratory judgment concerning the lawfulness of section 3.10 and the Fee. Accordingly, its Declaratory Causes began to accrue on 31 December 2015. *See Raftery*, 291 N.C. at 183, 230 S.E.2d at 407.

Plaintiff, however, argues that the continuing-wrong doctrine postponed accrual. According to Plaintiff, the Fee was unlawful, and the Fee was a continuing wrong because Plaintiff paid the Fee incrementally. And thus, Plaintiff's causes of action did not accrue until its final payment of the Fee. We disagree.

The continuing-wrong doctrine "provide[s] that the applicable limitations period starts anew in the event that an allegedly unlawful act is repeated." *Quality Built Homes Inc. v. Town of Carthage*, 371 N.C. 60, 70, 813 S.E.2d 218, 226 (2018). "When this doctrine applies, a statute of limitations does not begin to run until the violative act ceases." *Williams v. Blue Cross Blue Shield of N.C.*, 357 N.C. 170, 179, 581 S.E.2d 415, 423 (2003) (citing *Va. Hosp. Ass'n v. Baliles*, 868 F.2d 653, 663 (4th Cir. 1989)). "A continuing violation is occasioned by continual unlawful acts, not by continual ill effects from an original violation." *Id.* at 179, 581 S.E.2d at 423 (quoting *Ward v. Caulk*, 650 F.2d 1144, 1147 (9th Cir. 1981)).

The *Quality Built* Court gave a "classic example" of a continuing wrong: repeated trespass. 371 N.C. at 70, 813 S.E.2d at 226. When there are multiple trespasses, each trespass is an independent "violative act." *See id.* at 70–71, 813 S.E.2d at 226. So under the continuing-wrong doctrine, the limitations period restarts after each trespass. *See id.* at 70–71, 813 S.E.2d at 226.

But *Quality Built* was not about trespass; it was about a town's collection of impact fees. *Id.* at 61–62, 813 S.E.2d at 221. There, the North Carolina Supreme Court considered whether the town of Carthage had authority to collect water and sewer impact fees. *Id.* at 61–62, 813 S.E.2d at 221. "The essence of plaintiffs' claim against the Town [was] that the Town ha[d] exacted unlawful impact fee payments from them." *Id.* at 71, 813 S.E.2d at 227.

The *Quality Built* plaintiffs "knew at the moment the Ordinances were passed, that they would be subject to the Ordinances' requirement of the payment of water and sewer impact fees." *Id.* at 62, 813 S.E.2d at 222. Accordingly, the town of Carthage argued that the continuing-wrong doctrine did not apply, but the Court rejected the town's argument. *Id.* at 71–72, 813 S.E.2d at 227. Rather, the continuing-wrong doctrine applied because the plaintiffs were injured each time they "were required to make impact fee payments in order to obtain approval for their development proposals." *Id.* at 72, 813 S.E.2d at 227. Therefore, the claim accrued each time plaintiffs paid an impact fee. *Id.* at 72, 813 S.E.2d at 227.

This case is distinguishable from *Quality Built*. There, the town of Carthage

required multiple distinct fees, and the Court held that the continuing-wrong doctrine applied because the builder was "required to make impact fee payments in order to obtain approval for their development proposals." *Id.* at 72, 813 S.E.2d at 227. But here, the Town did not require multiple fees; it only required one, with an installment option to accommodate Plaintiff. And here, development approval did not hinge on separate payments; the Town approved development when it approved the SUP.

In other words, the continuing-wrong doctrine does not apply here because Plaintiff's payments were merely a "continual ill effect[] from an original violation"— application of section 3.10 via the Fee. *See Williams*, 357 N.C. at 179, 581 S.E.2d at 423. Although separately paid, Plaintiff's Fee payments were not distinct fees required by section 3.10. The payments were partial, but the Fee was a fixed total that Plaintiff chose "in lieu of" building "affordable housing." The payments were not "continual unlawful acts" like the multiple fees assessed in *Quality Built*. *See* 371 N.C. at 72, 813 S.E.2d at 227. Rather, they were a "continual ill effect[] from an original violation." *See Williams*, 357 N.C. at 179, 581 S.E.2d at 423.

Compare the Fee in this case to repeated trespass, the "classic example" of a continuing wrong. *See Quality Built*, 371 N.C. at 70, 813 S.E.2d at 226. When there are multiple trespasses, there are multiple "violative acts." So under the continuing-wrong doctrine, the limitations period restarts after each trespass. *See id.* at 70–71, 813 S.E.2d at 226.

On the other hand, one extended trespass is just one "violative act"—even if

the duration of the trespass is quite long. The extension of the trespass may increase the harm, but an increase in harm does not create multiple "unlawful acts." *See Williams*, 357 N.C. at 179, 581 S.E.2d at 423. Instead, the increase in harm is a "continual ill effect[] from an original violation." *See id.* at 179, 581 S.E.2d at 423.

Section 3.10 and its conditions are one extended "trespass"—not several repeated ones. The Town began "trespassing" on Plaintiff when it conditioned the development of the Property. And to be sure, this "trespass" would have continued even if Plaintiff chose to build affordable housing instead of paying the Fee. That is because there is just one allegedly unlawful act: the conditions established by the SUP and section 3.10. As stated above, any additional harm from subsequent Fee payments is not a distinct unlawful act; subsequent Fee payments are just the "continual ill effect" of the SUP and section 3.10. *See id.* at 179, 581 S.E.2d at 423.

Therefore, the continuing-wrong doctrine does not apply to Plaintiff's Declaratory Causes. *See id.* at 179, 581 S.E.2d at 423. Because the continuing-wrong doctrine does not apply, Plaintiff's Declaratory Causes accrued on 31 December 2015, as detailed above. *See Raftery*, 291 N.C. at 183, 230 S.E.2d at 407.

### 2. Applicable Statute of Limitations

Now that we know when Plaintiff's Declaratory Causes accrued, we must discern whether Plaintiff filed its complaint within the applicable statute of limitations. Plaintiff argues that a three-year statute of limitations applies, *see* N.C. Gen. Stat. § 1-52(2); the Town, however, argues that a one-year statute of limitations

applies, *see* N.C. Gen. Stat. § 160A-364.1.

Plaintiff filed the complaint on 24 October 2019, and Plaintiff's Declaratory Causes accrued on 31 December 2015, at the latest. *See Raftery*, 291 N.C. at 183, 230 S.E.2d at 407. So even taking the allegations in Plaintiff's complaint as true, Plaintiff's Declaratory Causes are time barred, regardless of whether the one-year or three-year statute of limitations applies. *See* N.C. Gen. Stat. §§ 1-52(2), 160A-364.1(b). In other words, regardless of which statute of limitations applies, Plaintiff's complaint "discloses [a] fact that necessarily defeats" its Declaratory Causes. *See Burgin*, 181 N.C. App. at 512, 640 S.E.2d at 428–29.

### D. Payment Causes

### 1. Accrual Date

Now we address the Payment Causes. As detailed above, Plaintiff made its first Fee payment on 5 July 2017, so the Payment Causes accrued on 5 July 2017. *See Amward Homes*, 206 N.C. App. at 56, 698 S.E.2d at 417–18. But again, the crux of the accrual questions is whether the continuing-wrong doctrine applies. If the continuing-wrong doctrine applies, then the Payment Causes are not barred under either the one-year or the three-year statute of limitations, as Plaintiff made the final Fee payment on 20 March 2019, within one year of filing the complaint. If the continuing-wrong doctrine does not apply, however, we must determine whether the one-year or the three-year statute of limitations applies because Plaintiff made the initial payment more than one year before filing the complaint, but within three years

of filing the complaint.

Like the Declaratory Causes, the continuing-wrong doctrine does not apply to the Payment Causes. The Fee payments are not distinct fees simply because they were separately paid: Although the payments were partial, the Fee was fixed. Therefore, the Payment Causes accrued after the initial payment, but the subsequent payments were not "continual unlawful acts"; they were simply a "continual ill effect[] from an original violation." *See Williams*, 357 N.C. at 179, 581 S.E.2d at 423.

### 2.  Applicable Statute of Limitations

Because the continuing-wrong doctrine does not apply to the Payment Causes, we must now determine which statute of limitations applies to the Payment Causes. Plaintiff argues that a three-year statute of limitations applies, citing subsection 1-52(2), and the Town argues that a one-year statute of limitations applies, citing subsection 160A-364.1(b).

"Where one of two statutes might apply to the same situation, the statute which deals more directly and specifically with the situation controls over the statute of more general applicability." *Trs. of Rowan Tech. Coll. v. J. Hyatt Hammond Assocs., Inc.*, 313 N.C. 230, 238, 328 S.E.2d 274, 279 (1985). The "situation" is "not determined by what either party calls it, but by the issues arising on the pleadings and by the relief sought." *Hayes v. Ricard*, 244 N.C. 313, 302, 93 S.E.2d 540, 545–46 (1956).

Subsection 1-52(2) states that a three-year statute of limitations applies to "a

liability created by statute." *See* N.C. Gen. Stat. § 1-52(2). On the other hand, subsection 160A-364.1(b) states that a one-year statute of limitations applies to "an action challenging the validity of any zoning or unified development ordinance." *See* N.C. Gen. Stat. § 160A-364.1(b).

Here, regardless of how Plaintiff labels its causes of action, the "situation" of this case is clear: Plaintiff is challenging the validity of section 3.10—a "development ordinance"—which allowed the Town to issue the SUP and demand the Fee. *See id.* In pleading its Payment Causes, Plaintiff explicitly requests a return of the Fee by asserting that the Fee is "unlawful." Indeed, throughout its complaint, Plaintiff alleges that section 3.10 and its conditions are unlawful.

Plaintiff argues that subsection 1-52(2) applies because it seeks "a liability created by statute," *see* N.C. Gen. Stat. § 1-52(2), but subsection 160A-364.1(b) "deals more directly and specifically with" Plaintiff's Payment Causes, *see* N.C. Gen. Stat. § 160A-364.1(b). Therefore, subsection 160A-364.1(b) "controls over the statute of more general applicability," *see Trs. of Rowan Tech.*, 313 N.C. at 238, 328 S.E.2d at 279, and Plaintiff's Payment Causes are subject to a one-year statute of limitations. *See* N.C. Gen. Stat. § 160A-364.1(b).

Plaintiff filed its complaint on 24 October 2019, and Plaintiff's Payment Causes accrued on 5 July 2017. *See Amward*, 206 N.C. App. at 56, 698 S.E.2d at 417–18. So even taking all allegations in Plaintiff's complaint as true, Plaintiff's Payment Causes are time barred. *See* N.C. Gen. Stat. § 160A-364.1(b).

In other words, Plaintiff's complaint "discloses [a] fact that necessarily defeats" its Payment Causes. *See Burgin*, 181 N.C. App. at 512, 640 S.E.2d at 428–29. Thus, all of Plaintiff's legal theories are timed barred. Accordingly, the trial court did not err by dismissing Plaintiff's complaint under Rule 12(b)(6). *See* N.C. Gen. Stat. § 1A-1, Rule 12(b)(6).

## V. Conclusion

We conclude that the trial court properly dismissed Plaintiff's complaint because all of Plaintiff's causes of action are time barred.

AFFIRMED.

Judges TYSON and ARROWOOD concur.